FREDERIKA. GALLAND, RESPONDENT, *v.* ABRAHAM GALLAND, APPELLANT.

ALIMONY. — The provision for alimony, made in the statute concerning divorces, was not intended to be a prohibition to the granting of alimony in other cases.

IDEM. — The power to decree alimony falls within the general powers of a Court of Equity, and exists independent of statutory authority. And in the exercise of this original and inherent power, a Court of Equity will, in a proper case, decree alimony to the wife, in an action which has no reference to a divorce or separation.

By SPRAGUE, J., SANDERSON, J., concurring:

IDEM. — The power conferred on the Court by the statute concerning divorce and alimony, to provide for the separate maintenance of the wife, pending an action for, or after, a final decree of divorce, does, by necessary implication, negative the power or jurisdiction of the Court to decree an allowance for the separate maintenance of the wife, except when jurisdiction is acquired by the commencement of an action for divorce upon allegations of statutory cause therefor.

IDEM. — The subject-matter of allowance for separate maintenance or alimony to the wife, as an independent matter, is not within the general original jurisdiction of Courts of Equity, and is only exercised in reference thereto as derivative and incidental to some other original, primary, substantive matter, to which their jurisdiction had attached.

APPEAL from the District Court of the Fourth District, City and County of San Francisco.

The case is stated in the opinions.

*Smith & Rosenbaum,* for Appellant.

*Robert Harrison,* for Respondent.

CROCKETT, J., delivered the opinion of the Court:

The question presented on this appeal is, whether or not a wife, who, without cause or provocation, is driven from her husband's house with her infant child, and is wholly without the means of support, can maintain an action against the husband for a reasonable allowance, for the maintenance of herself and child, unless she couples with the application a prayer for a divorce?

In the early days of English jurisprudence, the rights of the wife, as against the husband or his estate, were extremely limited. The theory was, that her separate entity was merged in his; that she was to be so completely under his dominion and control as to entitle him to administer reasonable personal chastisement for her offences; that she had no control over his estate, and could maintain no action against him for any cause whatsoever. A system so utterly inconsistent with a just and enlightened view of the marriage relation could not long withstand the advancing march of civilization. Gradually, but steadily, these stringent rules were relaxed in favor of the wife, until finally marriage came to be regarded in law as simply a civil contract between persons capable of contracting, and in which the parties were reciprocally entitled to certain reasonable rights, which the law would protect. Amongst other rights secured to the wife, is the right to be suitably supported and maintained by the husband, according to his means and station. If he fails or refuses to provide such support for her, the law authorizes her to purchase from others, on the credit of her husband, whatever is necessary for her maintenance and suitable to her station in life. There can be no diversity of opinion on this point, which is thoroughly well settled. But is this the only remedy for a deserted and dependent wife, who either has no subsisting cause for divorce, or who, having just grounds for dissolving the marriage, hopes for a reformation in her husband, and therefore does not desire a divorce? The purchasing from others, on the husband's credit, the necessaries for her support, affords, at best, a most humiliating, unreliable and precarious means of subsistence. If the

credit and pecuniary responsibility of the husband be un-
questionable, the tradesman dealing with the wife takes the
risk whether the articles furnished are really necessaries
suitable to her condition ; and he sells to her in view of a
strong probability that his demand may be disputed by the
husband, and will not be paid, except after an expensive
litigation. But he may be wholly ignorant of the husband's
pecuniary condition ; or the husband, though rich, may
have no visible, tangible property subject to be seized in
execution ; and in all or either of these contingencies, it is
evident the wife of a wealthy husband might starve for lack
of the necessaries of life, because of her inability to procure
them on the husband's credit. If this resource fail her,
how is she to obtain relief, if she either has no grounds for
divorce, or does not desire a divorce ?   Is the law so deplor-
ably deficient as to afford no remedy to a deserted and
starving wife under these circumstances ?  If so, it is a
reproach to the civilization of the age, and the law-making
power should promptly correct the evil. But the law, in my
opinion, is not amenable to this reproach and affords an
appropriate remedy.

The statute of this State regulating divorce and alimony,
entitles the wife to a divorce if the husband has deserted
her for two years ; and on filing her complaint, the Court is
authorized to grant her alimony, *pendente lite*—and perma-
nent alimony, if she obtains the divorce. But there is no
provision of the statute which authorizes an application for
alimony, except in connection with a prayer for divorce ; and
it is claimed on behalf of the defendant, that, inasmuch as
provision is made for the allowance of alimony only on an
application for divorce, it was the intention of the Legislature
to limit the power of the Court to grant alimony to that class
of cases. The maxim *"expressio unius est exclusio alterius"* is
invoked as applicable to this proposition. But, in my opin-
ion, it has no application to the case. The main subject-
matter of the statute was the regulation of divorce ; and
only as incidental to that subject the statute prescribes the
power of the Court in respect to alimony in that class of
cases. The Legislature was not dealing with the general

subject of alimony, as an independent subject-matter of legislation; but, only, as one of the incidents of an application for divorce. It saw fit to define the power of the Court over the allowance of alimony on an application for divorce; but was not considering the subject of alimony in any other class of cases. If it had provided that a writ of *ne exeat* or *distringas* might issue against a defendant in an action for divorce, it would scarcely be claimed by any one that this was equivalent to a declaration that such writs should not issue in any other class of actions. For the same reason, a provision for alimony in a suit for divorce is not to be considered as a declaration that alimony shall not be allowed in other actions. The maxim which is invoked has no application to this class of cases.

If alimony can be granted without an application for divorce, it can only be because it comes within the general powers of a Court of Equity, independently of the statute. In England, the decisions on this point have been by no means uniform. In some, the power has been maintained by eminent judges; in others, it has been doubted; and in a few, it has been denied. In America, there has been a similar diversity of opinion. The power of a Court of Equity to decree alimony, where no other relief was asked, has been upheld, in well considered cases, by the Supreme Courts of Virginia, Kentucky, North Carolina, South Carolina and Alabama. In *Butler* v. *Butler* (4 Littell, Ky. R. 202), the question was elaborately reviewed by Judge Mills—one of the most eminent jurists of that State—and his reasoning is so convincing as to commend itself to every impartial mind. He says: "Suppose the case of abandonment by a husband, and that the separation is complete, without any sentence, and that the wife is left to the humanity of the world, without support, has the Chancellor, without the statute, or in cases not embraced by it, no authority to direct a portion of the husband's estate to be set apart for the support of the wife, leaving the marriage contract as obligatory as ever? This is a question different from the power of separation, and deserves separate consideration. It is true that the Courts of Chancery would always grant

this after the spiritual Court had acted as to the separation, and before, when there had been an agreement (to separate); but without such previous sentence or agreement, could it never interfere? On this point, the English authorities are contradictory, and, indeed, somewhat irreconcilable. Cases, during the usurpation, went that far; but, in answer to these, it is said that the jurisdiction was expressly given, and that such doubts afterwards existed of the validity of these decrees, that they were confirmed by Parliament. * * * Besides, in the cases of *Lashbrook* v. *Tyler* (1 Ch. R. 24), *Williams* v. *Callow* (2 Vern. 752), *Watkins* v. *Watkins* (2 Atkin, 97), alimony was decreed where there appears no sentence of separation or agreement; and in at least two of these cases, it certainly appears there was neither. In some other cases, where the existence of an agreement was relied on, the Court only used it as a pretext for jurisdiction, and did not confine itself to the terms of the agreement, but departed from it in making such allowance as was equitable. Between such conflicting authorities, we consider ourselves at liberty to chose and decide according to the principles of equity and reason of the case. It is clear that strong moral obligations must lie on any husband, who has abandoned his wife, to support her. The marriage contract, and every principle, bind him to this. To fail to do it, is a wrong acknowledged at common law—though that law knows no remedy, because there the wife cannot sue the husband. But in equity, the wife can sue the husband; and it is the province of a Court of Equity to afford a remedy where conscience and law acknowledge a right, but know no remedy. Why, then, should the Chancellor shrink at this case and refuse a remedy? It is evident that this arose in England, for fear of intruding upon the ground occupied by the Ecclesiastical Courts. These Courts were incorporated with their government, and as much composed a part of the civil organization of that country as our County Courts do here, and their sentence on subjects within their jurisdiction was as obligatory, and as much noticed in their civil Courts, as the decisions of other Courts; and, indeed, they kept and held jurisdiction of some matters strictly

temporal. It became necessary to draw the line of demarcation around them, and restrain other tribunals from occupying the same ground, and to refuse to entertain concurrent jurisdiction, leaving the party to apply there for his or her remedy. But, in this country, we have no such Courts or boundaries around them to notice. The reason, then, for refusing the jurisdiction of such cases as are peculiarly temporal—and especially this case, which lies within the compass of the general grant to the Chancellor—has here ceased and does not exist. And grievous wrongs might exist, without remedy, until the Legislature interfered— which is against a well known principle, ripened into a maxim. Indeed, probable cases might be supposed and known, where, in one year, absolute starvation might be the consequence of abandonment and withdrawing the means of support, if the Chancellor has no power to interpose. We therefore conceive that the Chancellor before the statute, and since, in cases not embraced by it, which have strong moral claims, had and has jurisdiction to decree alimony, leaving the matrimonial chain untouched; and that these authorities, which decide in favor of such jurisdiction, ought to prevail."

I can hope to add nothing to the cogency of this reasoning, which appears to me to admit of no satisfactory answer.

The same proposition is maintained in *Purcell* v. *Purcell* (4 Hen. & Mun. 507); *Almond* v. *Almond* (4 Randolph, 662); *Logan* v. *Logan* (2 B. Mon. 142); *Prather* v. *Prather* (4 Desasseur, 33); *Rhame* v. *Rhame* (1 McCord, Ch. R. 197); *Glover* v. *Glover* (16 Ala. R. 446.)

It has been the constant practice of Courts of Equity, not only to enforce agreements for separation and a separate maintenance of the wife, where a divorce was not asked for or decreed, but in such cases, as remarked by Judge Mills, in *Butler* v. *Butler* (*supra*), "where the existence of an agreement (to separate) was relied on, the Court only used it as a pretext for jurisdiction, and did not confine itself to the terms of the agreement, but departed from it in making such allowance as was equitable." If the Court would entertain jurisdiction to enforce an agreement for separation,

and then felt itself at liberty to depart from the terms of the agreement in awarding an allowance to the wife, it is difficult to discern, on any principle of reason or justice, why it should refuse to take jurisdiction, when the husband simply turns his wife out of doors, without cause, and refuses to support her.  We do not perceive on what ground, a wife who *agrees* to separate from her husband, should stand on a more favored footing than one who clings to him in spite of his ill-usage, until she is driven from his house, and forbidden thereafter to speak to him.  It is better, in our opinion, to abandon the subterfuge, to which Courts have sometimes resorted in such cases, " as a pretext for jurisdiction," and administer the appropriate relief without the " pretext."

At common law, the wife had no interest except her right of dower in the estate of the husband, acquired either before or after the marriage.  The right of dower depended on the fact, whether or not she survived the husband.  Even her own estate, unless settled to her sole use, became, to a great degree, merged in his.  But under the laws of this State, the wife not only retains her separate property, but that which is earned during the marriage, becomes the common property of the husband and wife ; and though it is subject to his control, as the head of the family, whilst the marriage continues, yet, if the wife survives him, or if the marriage relation be dissolved by a decree of the Court, except for the adultery or extreme cruelty of the wife, she is entitled to one half of the common property then remaining.  The theory on which this right is founded is, that the common property was acquired by the joint efforts of the husband and wife, and should be divided between them, if the marriage tie is dissolved either by the death of the husband, or by the decree of the Court, unless the wife shall have forfeited her right by committing an act of adultery, or extreme cruelty ; and even then, the Court pronouncing the decree is authorized to apportion the property at its discretion.  With these liberal provisions for the wife, who has a joint and equal interest with the husband in all property acquired during the marriage, it would present an anomaly in jurisprudence if the husband, without cause, could drive his wife

from his house without any provision for her support, and appropriate the entire common property and *its* income to his own use, whilst the Courts would be powerless to compel him to set apart a portion of the property for her support, unless she coupled with her application a prayer for a divorce ; and if she had no lawful ground for a divorce, or was unwilling to assert it, she would remain utterly without redress from the Courts, and might starve for lack of the necessaries of life, unless she could persuade some reluctant tradesman to furnish them on the credit of her husband. Whatever reason may have prevailed at common law, to induce the Courts to withhold their aid from the wife under these circumstances, none exists in this State, why a Court of Equity should refuse to compel an offending husband to provide out of their common property, for the support of an ill-used wife, who has been forced to seek protection elsewhere than under her husband's roof.

It is urged, however, in argument, that if this be our ruling, it will tend to breed discord in families, and to encourage discontented wives to abandon their husbands on frivolous pretexts of ill-usage, relying on the Courts to compel the husbands to support them. On the other hand, however, it might be urged with even more force, that if such redress be denied to the wife in proper cases, dissolute and unprincipled husbands would be encouraged to abuse their wives, by a consciousness that any ill-treatment which stopped short of a lawful ground for divorce, was without redress in the Courts. The Courts must deal with human nature as they find it; and no system of jurisprudence can be so administered as to avoid possible abuses in exceptionable cases.

On the whole case, we think the demurrer to the complaint was properly overruled, and that the judgment ought to be affirmed, and it is so ordered.

SPRAGUE, J., delivered the following dissenting opinion, in which SANDERSON, J., concurred :

This is an action by a wife against her husband, for permanent alimony. The substance of the complaint is as fol-

lows :   That plaintiff and defendant were duly married, and
became husband and wife in the Kingdom of Prussia, in the
year 1859, and immediately removed to the State of Califor-
nia, from which time they continued to live and cohabit
together as man and wife, in this State, till November, 1864,
during which time they had born unto them one child, a son
(now under plaintiff's care), and by their united exertions
acquired property of the value of $20,000, which property
consists of money, stocks, notes and other personal securi-
ties, now entirely in the hands and under the control of
defendant ; that in the month of November, 1864, defendant,
without cause or provocation, drove plaintiff from his house,
and ever since has, and still does refuse to live or cohabit
with plaintiff, allow her to return to his house, or to speak
to him ; that since the separation, as aforesaid, the defendant
has supplied her with $77 per month for the maintenance of
herself and child, but threatens to reduce or wholly deprive
her of this allowance at his pleasure ; that she has no sep-
arate property.   Wherefore, plaintiff prays permanent ali-
mony in the sum of $150 per month, to be paid and secured
to her for the separate maintenance of herself and child, and
that the custody of said child be awarded to her.

This complaint was filed August 9, 1866, to which defend-
ant demurred on the ground :   First—That the complaint
does not state facts sufficient to constitute a cause of action ;
Second—That the facts stated in the complaint do not war-
rant the relief asked for, or any part thereof.

The points presented on this appeal are directly raised by
the demurrer to the complaint, and are :   First—Can an
action for alimony alone, as an independent proceeding,
under any state of facts, be maintained in this State?   And,
Second—If such action can be maintained, upon a proper
state of facts, are the facts stated in the present complaint
sufficient to sustain the action and authorize relief to any
extent ?

At common law a wife cannot maintain an action against
her husband for any purpose, under any circumstances, and
if the present action can be maintained, it must find its war-

rant in our State legislation, or within the comprehensive but well defined original, equitable jurisdiction of our Courts.

The facts alleged in the complaint manifestly do not place the plaintiff within the direct provisions of any statute of this State authorizing an action to be maintained by a wife alone ; or against her husband for any purpose ; no fact or facts are alleged constituting a ground for divorce, nor does the action concern her separate property, nor her right or claim to homestead property. And in considering the question with reference to the right of the wife to maintain this action for the relief sought by virtue of the original equity powers and jurisdiction of our District Courts, the question naturally suggests itself, whether the statute of this State concerning divorce, which provides for temporary and permanent alimony, in connection with and based upon an action or final decree for divorce, does not, by necessary implication, exclude and deny a right of action for alimony, disconnected with and independent of an action for, or final decree of divorce. In other words, whether the power conferred upon the Court by the statute, to provide for the separate maintenance of the wife, pending an action for or after final decree of divorce, does not, by necessary implication, negative the power or jurisdiction of the Court to decree an allowance for the separate maintenance of the wife, except when jurisdiction is acquired by the commencement of an action for divorce, upon allegations of statutory cause therefor.

The fourth section of the Act concerning divorces (Statutes of 1851, p. 186), enumerates and defines the causes for which our District Courts are authorized to grant divorces "from bed and board or from the bonds of matrimony," and Section 7 of the same Act provides that "in any action for divorce the Court may, during the pendency of the action, or at the final hearing or afterwards, make such order for the support of the wife and the maintenance and education of the children of the marriage as may be just, and may, at any time thereafter, annul, vary or modify such order, as the interest and welfare of the children may require." This statute, in my judgment, by necessary implication, fixes and determines the basis of the right of the wife to claim an allowance for her

separate maintenance, as against her husband, limits and restricts the power and jurisdiction of the Court to grant such allowance to the wife, subordinates such power and jurisdiction to an antecedent jurisdiction of the Court, acquired and entertained in the statutory actions for divorce, and renders the right of the wife to claim alimony, and the power of the Court to order or decree the same, dependent upon and incidental or auxiliary to an action pending for divorce, or final decree in such action.

The power and jurisdiction of the Court to grant temporary or permanent alimony is directly conferred, pending, or on, or after final decree in an action for divorce, and, by necessary implication, is denied or withheld, as an original, independent jurisdiction or power, upon the well established principles of construction of statutes *expressio unius est exclusio alterius*. And this would seem to be conclusive alike upon the common law and equity powers of our Courts, and must control, notwithstanding the apparent hardship in exceptional cases, until the Legislature may deem it expedient to recognize a right in the wife to demand an allowance from the husband for her separate maintenance, under prescribed circumstances, without reference to a legal separation, and provide a mode for the enforcement of such right.

It is very clear that the claim attempted to be enforced by this action has no common law existence as a separate, independent right; and the statutes of our State having failed to recognize or confer such right, except as incidental to and dependent upon a proceeding for divorce, thereby, by necessary implication, denying the existence of the same as a substantive, legal or equitable entity, capable of invoking the aid of our Courts for its recognition and enforcement, it follows that the first point raised by the demurrer to the complaint is well taken, and the Court, in my judgment, erred in overruling the same.

With these views, it becomes unnecessary to indicate an opinion upon the question as to the original inherent jurisdiction and power of a Court of Chancery over the independent subject-matter of alimony or separate maintenance to the wife, in the absence of legislative enactments; but the

very able and plausible argument of counsel for respondent
has prompted a very thorough investigation of all the author-
ities referred to by counsel, and all within the reach of this
Court, and after such investigation, I am entirely satisfied,
upon reason and largely preponderant authority of both
English and American Chancery Courts, that the subject-
matter of allowance for separate maintenance or alimony to
the wife, as an independent matter, is not within the general
original jurisdiction of Courts of Equity, and such jurisdic-
tion is only exercised in reference thereto as derivative and
incidental to some other primary, original, substantive mat-
ter, to which their jurisdiction had attached, or subject to
their special control.  Says Mr. Clancy: "These Courts
have no jurisdiction to decree such a provision to the wife,
merely because her husband has deserted her, or because
she finds it necessary for her safety to remove herself from
his power, unless she has also property over which they have
control.  Such a jurisdiction belongs to the spiritual Courts
only, and even its authority arises but incidentally from the
power it has of decreeing separation *a mensa et thoro,* when
the wife libels her husband, on account of desertion or
cruelty, and seeks the consequent relief." (Clancy on Mar-
ried Women, Chap. IX, p. 549.)  And Mr. Bishop, in his
very admirable work on Marriage and Divorce, after giving
the definition of the term alimony as "the allowance which
the husband, by order of Court, pays to his wife living sep-
arate from him for her maintenance," says : "The allowance
may be for her use either during the pendency of a suit, in
which case it is called alimony *pendente lite,* or, after its ter-
mination, called permanent alimony.  It has no common law
existence as a separate, independent right; but, wherever
found, it comes as an incident to a proceeding for some other
purpose, as for a divorce—no Court in England having any
jurisdiction to grant it where it is the only relief sought."
(2 Bishop on Mar. and Div. 4th edition, Sec. 351, p. 549.)
Again, after a very general citation and review of English
and American authorities, the reasons and foundations for
the rule, as above stated, are briefly presented in Section
374 (561) as follows : "As a general proposition, a decree

for separation in favor of the wife must be attended, if she asks for it, by a decree for alimony. And, upon the same principle rests the better and general doctrine already discussed, that no Court can grant alimony when it is the only thing sought, because, in the nature of the case, an adjudication allowing the wife to live separate from the husband is a necessary foundation for an adjudication compelling him to pay her a separate support. His ordinary duty is to maintain her in cohabitation with him—not otherwise; and the Court cannot adjudge him obligated to do it in separation until it adjudges that she may live separate. *   *   *   * Upon the same principle rests the legal liability of the husband to pay any third person for necessaries which himself has refused to provide; but here, as the wife is not a party to the suit, the adjudication can extend no further than to control the particular case. *   *   *   * In short, the doctrine extends through the entire field of our law as administered alike in the common law, equity and ecclesiastical tribunals, that, in effect, whenever the wife is adjudged entitled to live separate from her husband, by reason of breaches of matrimonial duty committed by him, a concurring adjudication must be pronounced that he support her while so living; the one adjudication being commensurate in extent with the other, and neither one existing without the other." (See also 2 Story's Eq. Jur. Secs. 1422, 1424; Fonbl. Eq. B. 1, Ch. 2, Sec. 6, Notes *n n; Fischle* v. *Fischle,* 1 Blackf. 365; *Chapman* v. *Chapman,* 13 Ind. 397; *Shannon* v. *Shannon,* 2 Gray, 285; *Shafe* v. *Shafe,* 4 Foster, 567; *Parsons* v. *Parsons,* 9 N. H. 309; *Lawson* v. *Shotwell,* 27 Miss. 633; *Doyle* v. *Doyle,* 26 Mo. 549; *Yule* v. *Yule,* 2 Stockt. 143; *Covey* v. *Covey,* 3 Id. 400; *McGee* v. *McGee,* 10 Geo. 482; *Peltier* v. *Peltier,* Harrig. Mich. Ch. R. 29.)

In several States, by legislative enactment, proceedings for obtaining an allowance for the separate maintenance of the wife, disconnected with proceedings for or a decree of divorce, is authorized.

In Maryland, Courts of Chancery exercise jurisdiction to grant alimony to the wife, but only upon allegation of facts which would be a sufficient foundation, in England, for

granting a divorce *a mensa et thoro.* (*Wallingsford* v. *Wallingsford,* 6 Har. & J. 485; *Helens* v. *Franciscus,* 2 Bland. Ch. R. 568.) And New York follows the procedure of the English Courts. (2 John. Ch. R. 206; 5 *Id.* 464; 3 Cow. 590; 6 John. Ch. R. 25, 178; 4 Paige, Ch. R. 74.)

It is clearly the duty and common law obligation of the husband to provide a suitable maintenance for his wife, if within his power, during the existence of the marriage relation. Yet, Courts of Equity have no original jurisdiction to enforce specific performance of this obligation. "The proper remedy," says Mr. Justice Story, "when the husband abandons the wife, or drives her from his house, and neglects or refuses to provide her suitable maintenance, is, by an action in a Court of law, to be brought against the husband by any person who shall, under such circumstances, supply the wife with necessaries according to her rank and condition; for, by compelling the wife thus to leave him, the husband sends her abroad with a general credit for her maintenance." (2 Story's Eq. Jur. Sec. 1422.) And I apprehend this is the only remedy against the husband for the maintenance of the wife, in this State, prior to the commencement of an action for divorce by either husband or wife, upon allegation of statutory cause.

In the present case, no statutory ground for divorce is alleged in the complaint. There is, therefore, no allegation of facts sufficient to sustain the action, or authorize relief, to any extent, in the direction prayed for.

For these reasons, I think the judgment should be reversed.