(June 28, 1904.)

## BEDAL v. SAKE.

[77 Pac. 638.]

DECREE OF DIVORCE—EFFECT ON COMMUNITY PROPERTY, WHEN RENDERED
IN FOREIGN JURISDICTION.

1. Where the wife abandons her husband and home in the state of Idaho, takes up her residence in the state of Oregon, and thereafter procures a decree of divorce on service by publication, forms a new community by another marriage, eight years and more after abandoning her husband returns to Idaho and by an action in the name of herself and husband as coplaintiff with her, seeks to obtain her interest in the homestead of herself and former husband, *held,* that after forming a new community she abandons all claim on the old one and cannot recover.

2. One who voluntarily leaves this jurisdiction and the domicile and community property located in this state and obtains a decree of divorce in another jurisdiction, cannot maintain an independent action thereafter in this jurisdiction for a division of the community property.

(Syllabus by the court.)

APPEAL from the District Court of Ada County. Honorable George H. Stewart, Judge.

Action to recover community property. Demurrer interposed by defendant which was sustained. Judgment for respondent for costs. Judgment affirmed.

C. C. Cavanah, for Appellant.

The primary question involved in this case is whether either party to a decree of divorce may thereafter maintain an action for a partition of an undivided one-half interest in the real property acquired during their marriage when the pleadings and decree in said divorce proceedings did not refer to or determine any disposition of any property, and such decree was rendered in a state other than where such property is situated. We contend that such an action can be maintained, and the rule is now settled in *De Godey v. Godey,* 39 Cal. 157; *In re Burdick's Estate,* 112 Cal. 387, 44 Pac. 734-737; *Biggi v. Biggi,*

98 Cal. 38, 32 Pac. 803; *Kirschner v. Dietrich,* 110 Cal. 502, 42 Pac. 1064; *Galland v. Galland,* 38 Cal. 271; *Lake v. Bender,* 18 Nev. 361, 4 Pac. 711, 7 Pac. 74; *Weiss v. Bethel,* 8 Or. 526; *Whetstone v. Coffey,* 48 Tex. 269; *Colvin v. Reed,* 55 Pa. St. 375; *Reel v. Elder,* 62 Pa. St. 308, 1 Am. Rep. 414. The decree in the divorce suit could not operate as *res judicata* or be a bar to the recovery of an interest in the common property, unless it was made an issue and the court granting the divorce passed upon the question, and was within the state where the property is situated. (Greenleaf's Evidence, secs. 528, 529, 532; *Earl v. Bull,* 15 Cal. 421; *Minor v. Walter,* 17 Mass. 237.)

T. J. Jones and T. Cahalan, for Respondent.

The respondent contends that so far as the plaintiff's amended complaint shows, the plaintiff, Maggie Bedal, without cause or provocation, on the thirtieth day of January, 1895, abandoned the defendant and their family and their homestead and voluntarily placed herself beyond the jurisdiction of the courts of the state of Idaho and submitted herself to the jurisdiction of the courts of a foreign state (Oregon). The Oregon law reads as follows: "In a suit for the dissolution of the marriage contract the plaintiff therein must be an inhabitant of the state at the commencement of the suit, and for one year prior thereto, which residence shall be sufficient to give the court jurisdiction without regard to the place where the marriage was solemnized or the cause of suit arose." The above has been the law in Oregon since 1862, and is still the law. (1 Hill's Annotated Laws of Oregon, p. 454, sec. 497; 1 Bellinger & Cotton's Annotated Codes and Statutes of Oregon (1901), p. 277, sec. 509.) Where homestead rights exist the wife surrenders her interest therein by abandoning her husband and home without legal excuse. (*Farwell Brick Tile etc. Co. v. McKenna,* 86 Mich. 283, 48 N. W. 959; *Brady v. Kreuger,* 8 S. Dak. 464, 59 Am. St. Rep. 775, 66 N. W. 1083; *Rosholt v. Mehus,* 3 N. Dak. 513, 57 N. W. 783, 23 L. R. A. 239; *Wiggin v. Buzzell,* 58 N. H. 329; *Heaton v. Sawyer,* 60 Vt. 495, 15 Atl. 166; *Redfern v. Redfern,* 38 Ill. 509; *Dasel v. Coburn,* 6 Allen, 71; *Byers v. Byers,* 21 Iowa, 268; *Biffle v. Pullman,* 114 Mo. 50, 21 S. W. 250; *Barnett v. Barnett,*

9 N. Mex. 205, 50 Pac. 340; *Roe v. Roe,* 52 Kan. 724, 39 Am.
St. Rep. 367, 35 Pac. 808.)

STOCKSLAGER, J.—The plaintiffs filed their amended
complaint, to which defendant demurred. The demurrer was
sustained and plaintiffs refusing to further plead, judgment
was ordered entered in favor of defendant for costs.

The amended complaint alleges that plaintiffs, Charles Bedal
and Maggie Bedal, ever since the twentieth day of March, 1900,
have been husband and wife; that the plaintiff, Maggie Bedal,
and the defendant, Harry Sake, are the joint owners and ten-
ants in common of eighty acres of land in Ada county; alleges
the marriage of Maggie Bedal and Harry Sake in the state of
Iowa in the year 1872, "and thereafter lived together as hus-
band and wife until January, 1895; that in the month of March,
1899, said Maggie Bedal commenced a suit against said Harry
Sake for a divorce in the circuit court of the state of Oregon,
in the county of Clackamas, and in the month of May, 1899,
a decree of divorce was duly allowed and entered, . . . . and
that said decree of divorce is now in full force and effect; . . . .
that no mention was made in said plaintiff's complaint for di-
vorce of any property of any kind or description whatever, nor
was any property rights of said parties mentioned in any of the
proceedings, nor did said court adjudge or decree any property
rights or give plaintiff any alimony, or require said Harry Sake
to give or pay to plaintiff in that action any money or prop-
erty. . . . . The only effect of the decree being to dissolve the
marriage relation. . . . . That there never has been any settle-
ment or agreement of any kind between said plaintiff, Maggie
Bedal, and defendant, Harry Sake, of any property rights ex-
isting between them, nor has said plaintiff, Maggie Bedal, by
any act on her part waived her interest in and to the aforesaid
community property; that the said circuit court of Oregon had
full jurisdiction at the time said divorce decree was rendered
of the said parties and subject matter in said divorce proceed-
ings; that in said divorce proceeding personal service was not
had upon said defendant Harry Sake, but service was duly had
by publication in compliance with the laws of the state of

Oregon relative to service by publication in divorce proceedings; that at the date of said decree of divorce said plaintiff, Maggie Bedal, and said defendant, Harry Sake, were, now are, and ever since said date of said decree, joint owners and tenants in common of all of the aforesaid real property, and the whole thereof was acquired, purchased and taken up from the United States government with the efforts, labor and expense of both plaintiff, Maggie Bedal and defendant, Harry Sake, during the time they were living together as husband and wife; that on or about October 4, 1893, with the consent and request of said defendant, Harry Sake, said plaintiff, Maggie Bedal, filed for record a written declaration of homestead upon the aforesaid real property in recorder's office of Ada county; said declaration was duly signed and acknowledged by said Maggie Bedal in the name of Maggie Sake, who at the time was the lawful wife of said Harry Sake, and was living and residing upon said real property with said defendant as their home and place of residence."

The fourth allegation is that plaintiffs are informed and believe, and therefore allege, that Maggie Bedal is now the owner of and entitled to an undivided one-half part or interest in and to the aforesaid real estate, and that Harry Sake is now the owner also of an undivided one-half part or interest in said real estate; that defendant, Harry Sake, now is, and ever since on or about the thirtieth day of January, 1895, has been, in the possession of said property, and does, and has ever since said date, refused to allow said plaintiff, Maggie Bedal, to enter upon, take possession, occupy or use said real estate or any part thereof, although she has requested and demanded said defendant to allow her to use said real estate, and has asserted her rights to her interest in said property by claiming and notifying said defendant as to the same; that she has never made conveyance of her said interest in said property to anyone; that there are no liens or encumbrances on said property appearing of record or to the knowledge of plaintiffs, and that no persons other than the said plaintiff, Maggie Bedal, and said defendant are interested in said premises as owners or otherwise. That plaintiffs are informed and believe, and therefore allege, that said premises produce each year a crop of the value of $500 net over

and above all expenses necessary for maintaining said premises and the raising of said crop, and that said premises have produced said crops each year since on or about the thirtieth day of January, 1895. Then follows a prayer for judgment for a partition of the said real property according to the respective rights of the parties aforesaid; or if a partition cannot be had without material injury to those rights, then for a sale of said premises and a division of the proceeds. The demurrer to this complaint is on two grounds: "1. That the complaint does not state facts sufficient to constitute a cause of action. 2. That said complaint is ambiguous, unintelligible and uncertain in this: that paragraph 3 of said amended complaint, commencing at the word 'that' in the fourteenth line of said paragraph to and including the word 'Sake' in the thirtieth line of said paragraph is a single sentence in which no positive allegation of fact is made, in that several allegations are attempted to be made in said sentence, said allegations being connected with each other by the conjunctions 'or' and 'nor,' and that it does not appear therefrom what course or action was taken with reference to the matters and things therein referred to and as to what was, and was not, done with reference to the matters and things and by the parties therein referred to; and that it does not appear therefrom upon what theory the plaintiffs rely as to the matters and things therein stated; that in the fifth paragraph of said amended complaint in the ninth and tenth lines thereof that the following allegation, 'that said Maggie Bedal has never made a valid conveyance of her said interest in her said real property to anyone,' is ambiguous and uncertain in this: that the inference is that a conveyance of some kind or character was made by said alleged Maggie Bedal to some person or persons who may or may not have an interest in this litigation, and who may be proper and necessary parties either plaintiffs or defendants herein; and that said language implies that a conveyance was made by plaintiff, said alleged Maggie Bedal, either to this defendant or some other person or persons, leaving said allegation ambiguous and uncertain as to the intent and meaning of the plaintiffs."

Opinion of the Court—Stockslager, J.

We have read the brief of counsel for appellant, together with the authorities cited with a great deal of interest and care. He insists that notwithstanding the fact that the plaintiff, Maggie Bedal, left her husband and home in Ada county, Idaho, in the month of January, 1895, went to the state of Oregon and in the month of May, 1899, obtained a decree of divorce from her husband and on the twentieth day of March, 1900, became the wife of her coplaintiff, Charles Bedal, that she is entitled to recover her interest in the property left in Idaho when she took up her residence in Oregon. The laws of Idaho deal very fairly with the wife in regard to community property. Certainly no fair-minded person would say that the wife should not share equally in the accumulation of a lifetime spent in the acquisition of property, and that is what our statute gives to the wife. Our divorce laws are certainly as liberal as could be desired. The grounds upon which a divorce may be granted in this state are as numerous as any of our sister states, hence under ordinary circumstances and conditions it is unnecesary for anyone to seek another forum in which to prosecute an action for divorce. The plaintiff in this action, for some reason best known to herself, saw fit to leave this state and prosecute her action in Oregon, certainly knowing that a division of the community property could not be decreed by the courts of that state on a service by publication. We are not informed by the complaint upon what ground or grounds she obtained her divorce, and it is immaterial and unimportant so far as her right to recover in this action is concerned. Suffice it to say, however, that it is hard to conceive of an excuse for her to leave this state or even Ada county, to prosecute her action. If her charge was extreme cruelty, or if she felt she was in danger of bodily harm from her husband, in case she commenced her action on a proper showing the court would have protected her from any danger from her husband and require the defendant to furnish her with means of support during the pendency of the action. On the final determination the court could, and certainly would, have rendered such a decree as to do equal justice to both parties to the controversy, thus ending the differences between them for all time. As we view it, it was the duty of the plain-

tiff to commence her action in the jurisdiction where the property was situated, procure personal service on the defendant, and thus acquire jurisdiction of the property, and in the disposition of the case place the court in a position to settle the marital relations as well as their property rights. The plaintiff, Maggie Bedal, in this action does not enlighten the court as to her reason for seeking a dissolution of the marital relations in another forum, standing on the naked legal proposition that the property once held by reason of her marriage relations with defendant, it remained hers until she disposed of it or until five years after her decree was granted in Oregon, when it is practically conceded that the statute of limitations would run against an action of this character unless she asserted her right to her interest in the community property.

The questions presented to us by this appeal are new in this jurisdiction; we find no case either in territorial times or since statehood wherein these particular questions have been before this court. We have examined the authorities cited by appellant, and many others bearing on the questions involved, but find no one where the facts have been similar. In all our investigation we have been unable to find a case where the plaintiff left the home voluntarily and sought redress in another forum, procured a decree of divorce, took unto herself another husband, thereby dissolving the marital community of herself and her former husband, and creating a new one with her present husband, who is coplaintiff in this proceeding.

We are not prepared to say that if a personal service had been made on defendant in the state of Oregon, or if he had appeared and contested the action of his wife for divorce in that state, that that court would not have acquired jurisdiction of the community property in this state. But it is alleged in the complaint that the service was by publication, and is not alleged that the defendant appeared to contest the action, hence we conclude that court did not acquire jurisdiction of the community property. The statute of this state only gives the court power to dispose of community property after the divorce is granted; indeed, it acquires its power from this source alone. The husband controls the community property up until the very hour

of the dissolution of the marriage relations. This being true, the question arises: How can the courts of this state acquire jurisdiction of what was community property at least up until the time the divorce was granted by the Oregon court, even though it be true that that court was not asked to, and made no attempt to, settle the property rights between the parties as husband and wife? It is presumed from the complaint, and the demurrer concedes it, that the plaintiff, Maggie Bedal, in this action, and Maggie Sake in that action, got all she asked for, which seemed to satisfy her until three years and more after she had assumed a new community and entered into a life contract with another husband. As we see it, the courts of this state are powerless to dispose of this property as community property under the existing circumstances. The courts of this state have not been called upon to dissolve the marital relations existing between Harry Sake and Maggie Sake, and if our conclusion is correct that our courts can only acquire jurisdiction in an action of this character, that is, for the purpose of disposing of the community property, by the entire divorce proceedings being before the courts of this state, then our courts are powerless to grant the relief demanded. We think our statutory provisions are in the interests of good morals and public policy and any other rule would be dangerous to the welfare of the citizens of our state.

The plaintiff, Maggie Bedal, says in her complaint that she has made frequent demands for the possession of and the right to occupy her interest in the property settled upon and improved by herself and former husband. She does not say when or how she made these demands, and counsel for respondent insist in their brief that the first information defendant had of her claims was when the summons was served upon him. We do not think this a matter of great importance only as it might show the good faith of the plaintiff, Maggie Bedal. Certain it is that she had lived separate and apart from her former husband almost nine years before she commenced this action, and we are not informed by the complaint why it was not commenced at an earlier date. It would seem that after she had lived away from her former husband and home for almost nine

years, and had taken unto herself another husband who must necessarily have entered into a contract to support and protect her until death ended the contract, or another decree, and that three years and more had passed under this new contract, that the defendant had reason to believe that his "labor alone" on the eighty acres of land would be left to him and his children (if he had any) for his declining years. This would certainly be the equitable view to take of it. It may be that the husband was entirely to blame for the separation. We know nothing of this, or what their troubles were, but as we have heretofore said, the courts of this state were open to her and would have provided her with all the protection she needed, and required the defendant to support her and provide her with means with which to employ counsel and conduct her case through the court of last resort, if she desired to do so. It is a matter of common information, not only in this state but throughout the Union, that courts will always see that the wife is properly represented and protected in the trial of her case; and when the final decree is entered she usually has her full share of the property—if there is any.

We will now briefly review the authorities cited by appellant in support of his contention that under the complaint in this case the plaintiffs should recover in this action.

Counsel says: "The primary question involved in this case is whether either party to the decree of divorce may thereafter maintain an action for a partition of an undivided one-half interest in the real property acquired during their marriage when the pleadings and decree in said divorce proceedings did not refer to or determine any disposition of any property, and such decree was rendered in a state other than where such property is situated." This we conceive to be the important question, and the one upon which this case must be reviewed in the light of our statute.

The first authority to which our attention is called in support of this contention is *De Godey v. Godey*, 39 Cal. 157. The following facts are stated in the opinion: "It appears by the allegations of the bill that the parties were married in 1862, and that for some years thereafter, and up to May 20, 1869,

they were lawful husband and wife.   On the last-mentioned day
the decree of divorce was entered, divorcing the parties, in the
sixteenth judicial district court for the county of Kern.   The
appellant instituted the action in that court, though at the time
of its commencement the parties in fact resided in the county
of Santa Barbara, in the seventeenth judicial district.   He
fraudulently brought the respondent into Kern county, for the
purpose of having the process served upon her, and the service
having been effected, he misinformed her of the purport of the
papers so served upon her, and with a view to conceal their true
nature from her, he, as soon as the officer making the service
had departed, violently took them from her possession and de-
stroyed them.   He thereafter returned the respondent to her
home in Santa Barbara county, and there kept her restrained
of her liberty and secluded from all intercourse with her
friends, and in ignorance of the pendency of the action, and
thereby deprived, of course, of any opportunity to make her
defense, though she had a good one on the merits."   Can it be
seriously contended that the facts in this case have any bearing
on the issues involved in the case at bar?   It would have been
a gross injustice to the wife to have permitted the husband to
take the advantage of her in the manner there attempted and
permit him to thus deprive her of her rights by fraud and de-
ception.   It will be observed, however, that the plaintiff in that
action did not leave the state of California, in which both par-
ties resided, to commence his suit for divorce, only into another
county and judicial district of the state.   He also procured per-
sonal service on the defendant, but destroyed it before she had
an opportunity to inform herself of the nature and character
of the action, and his every act was tainted with an attempt to
defraud the defendant.   He goes into another county of the
state to commence his action and does not attempt to have the
property rights settled.   She commences her action at a later
date and after she is informed of the nature of the decree in
the former action to settle the property rights, and the court
says she is not barred.   What else could the court say under
the facts in that case?   She had not voluntarily had her day
in court and had had no opportunity to litigate her rights; in

other words, she had not prosecuted an action for a decree of divorce in another forum, and then come back to the home county she had voluntarily left, to prosecute another action in the name of herself and another husband for a division of the community property of herself and former husband.

Our attention is next called to the case of *In re Burdick's Estate,* 112 Cal. 387, 44 Pac. 734. The facts in this case have no relation to the case at bar, and it follows the case of *De Godey v. Godey* above referred to, and we are in full sympathy with the former case under the facts as therein related.

In the case of *Biggi v. Biggi,* 98 Cal. 35, 32 Pac. 803, Mr. Justice Harrison states the facts as follows: "The plaintiff was at one time the wife of the defendant Narcissa, and in October, 1888, pending an action between them for divorce, they entered into an agreement for the division of their property, in which it was provided that a lot of land situated on San Pablo avenue, in Oakland, should be sold, and the proceeds of the sale equally divided between them, but that such sale should not be for less than $3,100, and that whenever offer should be made therefor one Vandercook should be the exclusive judge as to the value of said premises, and as to accepting or rejecting said offer, and that they would abide by his judgment and sell the premises for such sum as Vandercook might determine. This lot of land had been purchased during the marriage of the parties and the title thereto taken in the names of them both, but the judgment of divorce which was afterward rendered between them was silent upon the disposition of the community property. In June, 1899, Vandercook received an offer of $3,200 for the property which he deemed sufficient therefor, and which the plaintiff agreed to accept, but the defendant, when requested thereto, refused to accept the offer, or sign a contract of sale unless he should receive the entire proceeds thereof."

The trial court held that the plaintiff had no interest in the land, which the supreme court said was error. Why not error? The parties to the divorce suit had agreed upon a settlement of this property as community property. The court had jurisdiction of the persons and property. They had entered into a solemn contract that the proceeds should be equally divided

when the property should be sold, and the court of last resort said the contract should be enforced.

In *Galland v. Galland,* 38 Cal. 265, cited by appellant, Mr. Justice Crockett, speaking for the court, states the facts as follows: "The question presented on this appeal is, whether or not a wife, who, without cause or provocation, is driven from her husband's house with her infant child, and is wholly without the means of support, can maintain an action against the husband for a reasonable allowance for the maintenance of herself and child unless she couples with the application a prayer for a divorce."

The facts in this case certainly are not in harmony with the case presented to us by the complaint, which contains no allegation as to why she left her home in Idaho and went to Oregon to procure her divorce. In the California case just cited the complaint stated that "in the month of November, 1864, defendant, without cause or provocation, drove plaintiff from his house and ever has, and still does, refuse to live or cohabit with plaintiff, allow her to return to his house, or to speak to him."

It is true plaintiff alleges in her complaint that she has demanded possession of her portion of the real estate which was community property, and that the defendant refused to allow her to occupy it, but it is not shown when she made this demand, owing to the fact that she took up her residence in Oregon, procured her divorce there, and was married to her co-plaintiff, Charles Bedal, on the 20th of March, 1900. We assume that she did not make this demand until after she had formed a new community with her present husband. It is hardly fair to assume that defendant Sake would extend a very warm reception to the plaintiff, Maggie Bedal, or encourage her very much in her ambition to procure for herself and husband one-half of the property that he had been left to care for and improve during her absence in procuring a divorce and selection of another life companion.

In the case of *Lake v. Bender,* 18 Nev. 361, 4 Pac. 711, 7, Pac. 74, we find the facts to be stated as follows: "When the cause came on for trial it was agreed by the respective parties and ordered by the court that the issues relating to the disposition

of the property should be withdrawn from the consideration of the jury and reserved for future consideration and determination by the court, in case a divorce should be granted. Upon the special findings and the verdict of the jury the divorce prayed for was granted. Subsequently, the court, sitting without a jury, tried the issues relating to the character and disposition of the property, and found that it belonged to the defendant individually." It does not seem that any judgment rendered under the above state of facts could in any way affect the case at bar. It is a very long, instructive case, with the authorities bearing on the issues presented, collated and commented upon, but we find nothing that enlightens us on the issues involved in the case we are considering, or that strengthens counsel in his position.

Again, in *Weiss v. Bethel,* 8 Or. 522, Mr. Justice Watson states the facts in this language: "This suit was originally commenced in the circuit court of Jackson county, but was afterward transferred to that of Benton county by an order of the court first named, upon written stipulation of parties. After the transfer plaintiff filed an amended complaint, by leave of court, and made several other parties defendants. Her amended complaint states in substance that she was married to defendant, Albert Bethel, in 1857, and lawfully obtained a divorce from him on the ground of desertion at the June term, 1866, of the circuit court of Jackson county; that at the time of the divorce the defendant Bethel was the owner of the Adam Holder donation land claim in Benton county, Oregon, containing three hundred and twenty acres; also of lots 1, 2, 3 and 4, block 3, of the city of Corvallis, in said county; that at the time she filed her complaint for divorce she was ignorant of the condition of said real estate; that said Bethel kept his business secret from her and led her to believe that he had sold or effectually encumbered it, so that at the time she did not know what disposition he had made of it." How can this case, under this statement of facts, have any bearing on the question at issue? The wife commenced her action in the jurisdiction where the defendant resided and the property was situated, but in her action for relief she pleads that by the fraudulent represen-

tations of the defendant she was led to believe that the property was encumbered and that she could not reach it. No such charge is against the defendant in this action and no reason given for leaving the jurisdiction of the defendant and property to commence her action in another state.

In the case of *Whetstone v. Coffey,* 48 Tex. 269, the facts, as we gather them from the opinion, are that the plaintiff in that action lived with her husband upon three hundred and twenty acres of land, the right to which had been obtained under the pre-emption laws by Whetstone and his wife. The plaintiff in this case resided upon the land from 1850 to 1859; in 1859 the husband sold the land to Ben Vansickle without her consent being given to the said sale. The court says it was then community property of Anderson Whetstone and his wife, Margaret Whetstone. To show that she never parted with said right by abandonment or otherwise, she alleged that she was forced to leave her said homestead and follow her then husband and family; that he shortly thereafter abandoned her; that neither he nor she had any other homestead up to the time that a divorce was obtained in 1865; that she has never acquired one since. Under such a state of facts, it is not to be concluded that she had lost her right to the land up to the time of the decree of divorce by his abandonment of and separation from her. It is not shown here that the plaintiff who seeks to establish her right to her interest in the community property of her deceased husband, although she was divorced from him, sought such relief with her coplaintiff, her husband, at the time of the institution of the action; in other words, she had not formed a new community, but it was shown that all proceedings were in the state of Texas, both in the action for divorce as well as the one for her interest in the property. *Colvin v. Reed,* 55 Pa. St. 375, is cited by appellant. The statement in this case is that James and Susanna Taylor at the time of their marriage in May, 1857, were citizens of Pennsylvania. Shortly after their marriage they made a visit to Iowa and returned, Mrs. Taylor not being pleased with the country. After their return she declared to him her intention not to live with him and refunded to him $40, his bill for the expenses of her jour-

ney to Iowa. She remained in Allegheny City and he went back to Bedford county in October and remained there until May, 1858, when he sold his farm to the defendant and removed to Iowa, leaving his wife in Pennsylvania. In 1860 Taylor commenced proceedings for a divorce *a vinculo,* and after due publication of notice a divorce was decreed on the ground of the desertion, alleged to have taken place in Pennsylvania. Susanna Taylor had no actual notice, and at the time was a resident citizen of the state of Pennsylvania, never having left it. The question on this state of facts is whether the Iowa court had jurisdiction to declare the divorce of Mrs. Taylor so as to discharge the lands of her husband in Pennsylvania from her right of dower. In closing the court say: "These arguments have been noticed, and it has been shown, I think, that the principle finds limit, when confronted by the equal and prior right of another state and by the acts of a plaintiff who has abandoned his domicile and his remedy to take up a new domicile where the defendant has never appeared." Applying this rule to the case at bar, what standing has the plaintiff in this court? She voluntarily abandons her domicile and takes up her residence in another state, there procures her decree of divorce on a service by publication, the defendant not appearing to contest her action, then after a number of years and after her new contract of marriage, comes to the court that always had jurisdiction of the property, for relief.

In *Real v. Elder,* 62 Pa. St. 308, 1 Am. Rep. 414, cited by appellant, we find the following language in the syllabus: "The injured party in the marriage relation must seek redress in the forum of the defendant, unless where the defendant has removed from what was before the common domicile of both."

We scarcely feel justified in prolonging this discussion or reviewing the large number of authorities cited by learned counsel for respondent. It seems to us that the authorities we have heretofore copied from and discussed, precludes the appellant from a recovery in this action on the pleadings, at least as they now stand, and the plaintiff having dissolved the old community, if not by her Oregon divorce, by her new one formed in the

marriage to her coplaintiff, precludes her from maintaining an action for the community property.

In *Heaton et al. v. Sawyer,* 60 Vt. 495, 15 Atl. 166, it was held that where the wife and children on the granting of the divorce moved from the premises and were absent two years, it was held to be an abandonment of the homestead. *Wiggin v. Buzzell,* 58 N. H. 329, holds that "A divorce obtained by a wife bars her homestead right in her husband's property unless such right is reserved by the decree of divorce." *Brady v. Kreuger,* 8 S. Dak. 464, 59 Am. St. Rep. 771, 66 N. W. 1083, holds: "Where the relation of husband and wife is terminated by divorce, she ceases to have any claim upon or right in his property, whether homestead or otherwise, unless such right is reserved to her by the decree of divorce. Whenever thereafter she seeks to assert any claim of any character in any part of the husband's property, she must establish her right by such decree or by valid contract between herself and him."

In *Rosholt v. Mehus,* 3 N. Dak. 513, 57 N. W. 783, 23 L. R. A. 239, a well considered and interesting case in which the authorities are collated and discussed by Chief Justice Bartholomew, he uses this significant language: "And it is true that courts liberally construe homestead laws for the purpose of effectuating their wise and beneficent intentions, to the end that no family, through the misfortune of poverty or the death of its legal head, may be deprived of shelter, and when the homestead consists of a farm, as in this case, of support. But all the reasons which have induced the law to favor the wife or widow in the matter of homestead rights are entirely absent in cases of divorce." (See *Doyle v. Coburn,* 6 Allen, 71.) *Barnett v. Barnett,* 9 N. Mex. 205, 50 Pac. 337, by Chief Justice Smith, is a very interesting one. We find this pertinent language used: "It is wisdom that forbids the multiplication of litigation on the same subject and spares suitors needless vexation in the determination of their rights. The parties to this controversy, having been separated by final decree of a court of competent jurisdiction, are estopped from further harassing each other as consorts in another tribunal."

A great many other authorities are cited by counsel for respondent supporting those already referred to in this opinion, but we do not feel called upon to pursue this discussion further. The plaintiff, Maggie Bedal, voluntarily abandoned her home and obtained her decree of divorce in a forum without jurisdiction to dispose of the community property—being service by publication—thereafter marries another and then forms a new community, she will have to look to her present community for her future support and happiness. We do not think she should enjoy the fruits of her new community and have a pension from her former one.

The judgment of the district court is affirmed, with costs to respondent.

Ailshie, J., concurs.

SULLIVAN, C. J., Dissenting.—I am unable to concur in the conclusion reached by the majority of the court. Section 2480, Revised Statutes, provides how community and homestead property shall be disposed of in case of divorce, and is as follows: "In case of the dissolution of the marriage by the decree of a court of competent jurisdiction, the community property and the homestead must be assigned as follows: 1. If the decree be rendered on the ground of adultery or extreme cruelty, the community property must be assigned to the respective parties in such proportions as the court, from all the facts of the case and the conditions of the parties, deems just; 2. If the decree be rendered on any other ground than that of adultery or extreme cruelty, the community property must be equally divided between the parties; 3. If a homestead has been selected from the community property, it may be assigned to the innocent party, either absolutely or for a limited period, subject, in the latter case, to the future disposition of the court; or it may be divided or be sold and the proceeds divided; 4. If a homestead has been selected from the separate property of either, it must be assigned to the former owner of such property, subject to the power of the court to assign it for a limited period to the innocent party."

In the case at bar it is alleged in the complaint that the property involved is community property acquired by the joint efforts of both husband and wife and thereafter was homesteaded under the laws of this state by the wife. While it does not appear on what grounds the wife obtained the divorce in the Oregon court, the presumption is that it was on sufficient ground and that the husband was in fault. If it was obtained on any other ground than that of adultery or extreme cruelty and had been obtained in a competent court of the state of Idaho, said section of the statute provides that the community property must be equally divided between the parties; and in other cases it must be divided as the court, from all the facts of the case and condition of the parties, deems just. And I do not think the fact that the divorce was obtained in the state of Oregon is a sufficient reason for depriving the wife of a part of the property that she had helped to accumulate. A court of equity would have power to do justice between the parties after the evidence was introduced on the trial, and if it showed the wife was entitled to receive a portion of the property that she assisted in accumulating, she certainly ought to have it.

The plaintiff in this action had filed a declaration of homestead on the land in controversy, and section 3041, Revised Statutes, declares that a homestead can be abandoned only by a declaration of abandonment or a grant of conveyance thereof, executed and acknowledged as therein specified.

The question of an innocent purchaser of said property, for a value, without notice, is not involved in this case. I think the allegations of the complaint state a cause of action, and the demurrer should have been overruled.