(No. 6720.   July 20, 1939.)

HENRY J. RADERMACHER, Plaintiff, v. D. H. SUT-
PHEN, District Judge, Defendant.

[92 Pac. (2d) 1070.]

530

Bissell & Bird, for Plaintiff.

A. F. James, for Defendant.

BUDGE, J.—The cause out of which this application for alternative writ of *mandamus* arises, *Radermacher v. Radermacher,* will be found reported in 59 Ida. 716, 87 Pac. (2d) 461, and may be referred to for a full understanding of the issues presented.

In *Radermacher v. Radermacher, supra,* the decree entered was modified, a petition for rehearing was filed, a rehearing granted and an opinion on rehearing was written in which the following language was used:

"The original opinion is therefore modified and we now hold no error prejudicial to appellant's rights was committed by the court's ruling and the court need not proceed further in that connection; the only question on remand being the amount of the award for separate maintenance and care, custody and support of the four minor children. Wherefore the trial court should set aside the decree heretofore entered awarding the property to respondent and require solely a proper, adequate and protected monthly allowance for the care, custody and support of herself and the four minor children."

Upon the going down of the *remittitur* a hearing was had, no transcript of which is before us however. At the conclusion of the hearing the trial court made and entered an amended decree and petitioner, appellant in *Radermacher v. Radermacher, supra,* filed application in this court

for a writ of mandate, and an alternative writ issued. To the application and to the alternative writ defendant district judge filed a demurrer "on the ground and for the reason that said application and said writ show on their face that the plaintiff is not entitled to the relief which he seeks herein, and on the further ground and for the further reason that neither said application nor said writ state facts sufficient to constitute a cause of action against this defendant."

The question to be decided is whether a writ of mandate will lie. An analysis of the language used in that portion of the opinion on rehearing directing the trial court to determine "the amount of the award for separate maintenance and care, custody and support of the four minor children . . . . and require solely a proper, adequate and protected monthly allowance for the care, custody and support of herself and the four minor children" discloses that the taking of testimony other than such as appeared in the original proceeding was required. It was necessary for the trial court to determine what would be a proper and adequate monthly allowance to be paid by petitioner for the support and maintenance of the wife and family. It was also necessary for the court to provide for the protection of said monthly allowance. In view of the fact that the original decree of the trial court awarded the property to the wife, which decree was in force for a time, it was also necessary for the court to determine what, if any, money or property remained in the hands of applicant's wife by reason of the sale and disposition of certain personal property and the collection of rents during the time that the original decree was in force and effect, and further to determine what property, if any, still remained unsold, and what money, if any, was in the hands of applicant's wife. As a result of such hearing the court made and entered its amended decree. It must be conceded that the court had jurisdiction to hear and determine the matters in controversy. It must also be conceded that the court acted and that its amended decree was made and entered. It is apparent from the language used in the opinion on rehearing in *Radermacher v. Radermacher, supra,* that the court was not limited to the performance of a purely ministerial act but was empowered

to exercise its judgment and legal discretion. Only by the exercise of judgment and legal discretion, which could be exercised only upon proper knowledge of facts, could the court determine the adequacy or amount of the monthly allowance to be decreed and a method whereby such allowance could be protected. If the court committed any error it was error of law not reviewable by *mandamus*. In *St. Michael's Monastery v. Steele*, 30 Ida. 609, 167 Pac. 349, the rule announced by this court is:

"The writ of mandate may be employed to require a court to enter a judgment in the exercise of its jurisdiction, but not to control its discretion or direct its decision. . . . A party considering himself aggrieved by the final judgment of a district court has his plain, speedy and adequate remedy at law by appeal to this court . . . . and where there is such remedy; the writ of mandate is not available."

To similar effect see *Blackwell Lumber Co. v. Flynn*, 27 Ida. 632, 150 Pac. 42.

In *Board of Commissioners of Shoshone County v. Mayhew*, 5 Ida. 572, 51 Pac. 411, in the syllabus by the court it is said:

"*Mandamus* will not lie to reverse the order of an inferior tribunal continuing the hearing of an action or proceeding before it, when such inferior tribunal is exercising a judicial discretion vested in it by law."

"The general rule is that it is not the function of *mandamus* to reverse orders of inferior courts or tribunals acting within their jurisdiction." (*Connolly v. Woods*, 13 Ida. 591, 92 Pac. 573.)

"Not only is it a general rule that *mandamus* cannot be used to control judicial discretion, but the view is also very generally entertained that although the writ may be used to correct the errors of courts when in the exercise of mere ministerial functions, it is not appropriate to review the action of a tribunal in any matter involving the examination of evidence and the decision of questions of law and fact since such a duty is not ministerial. In other words, *mandamus* is not the proper remedy by which to correct or reverse erroneous rulings of inferior tribunals, whether interlocutory or final, that being the office of a writ of error

or an appeal, which *mandamus* will not be allowed to supplant in accordance with the general principle that where relief may be obtained through the ordinary channels of the law the writ is not an appropriate remedy. . . . '' (18 R. C. L., sec. 230, p. 297.)

In *State v. District Court*, 77 Mont. 594, 251 Pac. 1061, the third and eighth syllabi announce the rule as follows:

"Where performance of legal duty involves exercise of judgment or discretion, such judgment or discretion cannot be directed or controlled by *mandamus*."

"Rendition of judgment where required by Supreme Court's opinion on reversing case calls for the exercise by trial court of judicial power, and not mere ministerial act, as affects right of *mandamus*."

"It is the general rule that, if certain matters are left open by the appellate court for determination by the lower court, a determination of other matters disposed of by the decree of the appellate court does not make the lower court's judgment void but erroneous." (*Patterson Land Co. v. Lynn*, 51 N. D. 329, 199 N. W. 766.)

See, also, *State v. Huston*, 28 Okl. 718, 116 Pac. 161; *State v. Great Northern Utilities Co.*, 86 Mont. 442, 284 Pac. 772; *State v. District Court*, 89 Mont. 531, 300 Pac. 235, 82 A. L. R. 1158; *Harding v. Garber*, 20 Okl. 11, 93 Pac. 539.

The demurrer to the writ must be sustained and the writ quashed and it is so ordered. No costs allowed.

Givens and Holden, JJ., concur.

Morgan, J., by reason of illness, did not participate in the decision.

AILSHIE, C. J. (Concurring in Part and Dissenting in Part).—It was my understanding, that by our opinion and the conclusion reached when this case was here before (59 Ida. 716, 87 Pac. (2d) 461 et seq.) we affirmed the decree of the district court in denying the divorce and reversed the decree in so far as it attempts to dispose of the community property; and we thereupon said:

"*the only question on remand being the amount of the award for separate maintenance and care, custody and support of the four minor children.*"

Now, the record before us on this petition shows clearly that the trial court did not comply with the order and judgment of this court. On the contrary, it is recited by the record, that a hearing, or rather what amounted to a *new trial,* was had, and thereupon the court entered a decree reading as follows:

"NOW, THEREFORE, by reason of the premises, it is hereby ordered, adjudged and decreed that the original decree of the court rendered herein on the 3rd day of September 1937, be and the same is hereby modified to read as follows:

"That the plaintiff Henry J. Radermacher take nothing by his Complaint. *That the defendant Freda Radermacher be and she is entitled to live separate and apart from the plaintiff.* That the defendant be and she is hereby awarded the sole custody, care and control of the minor children of plaintiff and defendant, namely Bertha Gale Radermacher, Freda Marjorie Radermacher, Katherine Elizabeth Radermacher, and Florence Maude Radermacher, provided that the plaintiff is given the right to visit said minor children at reasonable times. That the plaintiff be and he is hereby required to pay toward the support and maintenance of the defendant and said minor children, subject to the further order of this court, the sum of Forty Dollars ($40.00) each month, the first of which monthly payments the plaintiff is ordered to pay on August 1, 1939, and other payments monthly thereafter. That the aforesaid award of Forty Dollars ($40.00) per month is hereby declared to be a lien upon all the real property, community and separate, of the plaintiff Henry J. Radermacher, hereby described as follows:

"(a) An undivided one-fourth interest in 1400 acres of grazing land situate in Camas County, State of Idaho, and standing of record in the name of Elmer Neilson and Tom Wokersien, described as follows:

"The West Half of the SE¼, SE¼ of the SE¼ of Sec. 29, S½ of the SW¼ of Sec. 28, NE¼, SE¼ of the NW¼ of Sec. 32, NW¼, SW¼ of NE¼, NW¼ of the SE¼ of Sec. 33, all of Section 30, and NW¼ of Sec. 31, Twp. 2–S, R. 14 E. B. M.

"(b) An equity, to-wit, a contract to buy, a certain 320 acres of grazing land situate in Gooding County, State of Idaho, and described as follows:

"The East Half of the Northwest Quarter and the North Half of the Northeast Quarter, both of Section Twelve, the South Half of the Southeast Quarter of Section One, all in Township Three South Range Thirteen E. B. M.; also the South Half of the Southwest Quarter of Section Six, Township Three South Range Fourteen E. B. M.

"(c) A certain 640 acres of grazing land situate in and in the vicinity of Monument Gulch situate in Camas County, Idaho, and described as follows:

"Southeast Quarter of the Southeast Quarter, and the West Half of the Southeast Quarter, and Southwest Quarter of Section 23; North Half, and Northwest Quarter of the Southwest Quarter, of Section 26; all in Township Two South, Range Twelve E. B. M.

"(d) Plaintiff's undivided three-fourths interest in what is known as the home Ranch on Clover Creek in Gooding County, Idaho, described as follows. to-wit:

"All of the right, title and interest of the said Henry J. Radermacher, namely, an undivided three-fourths interest, in the NW¼, the N½ of the SW¼, and the SW¼ of the SW¼ of Sec. 28; the SE¼ of the SE¼ of Sec. 29; the NE¼, and the NE¼ of the SE¼ of Sec. 32, and the NW¼ of the NW¼ of Sec. 33, all in Twp. 4–S, R. 13 E. B. M.

*"That the home house on the home ranch on Clover Creek last above described, heretofore and now occupied by the defendant and said minor children, together with the entire enclosed yard about said house and all buildings situate in said yard, including the wood and coal house, the milk house, also the chicken house (which is situate outside of but near said house yard), the usual garden space on said land, also such portion of the barn situate near said house yard as may*

*be necessary to house the two milk cows hereinafter mentioned, together with all household goods, furniture and other personal property now in said house and yard (excepting any clothing of the plaintiff and the pictures of plaintiff's parents), together with all poultry, be and the same are hereby set aside, until the further order of the court, to the defendant for the exclusive use and benefit of the defendant and said minor children. That the defendant is further awarded the right to select and keep selected, from any cows belonging to plaintiff, and use, two milking cows, together with the necessary feed and pasture for said milk cows, and grain for said poultry, produced or to be produced on said home ranch. The plaintiff is further required either to furnish the defendant with a team, harness, and wagon for the purpose of enabling her and said minor children to haul sagebrush or other fuel and the feed for said cows, when needed, or at his option to do such hauling himself. That* the expenditures made by the defendant from moneys received by her from the sales of personal property made by her since September 3, 1937, from rentals received by her since said date, and from other sources, are hereby confirmed and ratified, and the court finds that said expenditures were properly made and necessary for the support of the defendant and the minor children of the plaintiff and defendant and for making improvements on what is known as the Clover Creek Ranch and for attorney fees and other expenses incurred by her in the proceedings had in the above case by the Supreme Court of the State of Idaho. That the plaintiff is further required to the extent of his means, to keep all taxes on both real and personal property so paid as to prevent the issuance of tax deed to the real estate or the issuance of distress warrants on the personal property. The court awards to the defendant that certain automobile which she purchased since the rendition of the decree of September 3, 1937. That the sum of $111.00 balance of money in the hands of the defendant on May 9, 1939 from the proceeds received by the defendant from said sales and rentals shall be considered as support and maintenance of the defendant and said minor children from such date to and including

July 31, 1939. That the decree of September 3, 1937 is hereby set aside in so far as it transferred to the defendant the title to any of the community property of the plaintiff and defendant.

"That this court hereby expressly retains jurisdiction in order to enable it to make any further or additional orders herein that may be required to be made in the future.

"Dated this —— day of May, 1939.

"D. H. SUTPHEN

"District Judge."

It will be seen from the foregoing, and especially the italicized portion of the decree, that the court not only made *provision for the support and maintenance of the wife and children,* by directing the husband to make monthly payments (which he had a right to do); but he also extended the order and judgment to cover and include the right of possession, use, management, and control by the wife of a large part of the community property *including the home.* Not only that but he ratified and confirmed all acts done and performed under a void order. This part of the order runs directly counter to the provisions of section 31–913, I. C. A., providing that "The husband has the management and control of the community property, except the earnings of the wife for her personal services and the rents and profits of her separate estate," etc.

Under the statutes, secs. 31–712 and 31–713, and the decisions of this court (*Benson v. District Court,* 57 Ida. 85, 62 Pac. (2d) 108, and *Sauvageau v. Sauvageau,* 59 Ida. 190, 81 Pac. (2d) 731), a trial court is authorized upon the granting of a divorce to dispose of the community property and the homestead. It has also been held in the above cases and cases therein cited, that, *when the divorce action is instituted, the court has the power to take jurisdiction of the community property and the homestead and to make all necessary and proper orders for its protection,* and prohibit the sale or other disposition of it without order of court until such time as the divorce action is heard and *finally determined.* It has likewise been held by the same cases (and citations therein contained) that the jurisdiction of the court

over the community property and homestead ceases and terminates at once upon the denial of a decree of divorce; and the husband thereupon may resume the exercise of his right and authority under the provisions of section 31–913, *supra.* If such is not the law, then the court may deny a divorce and still substitute its judgment for the judgment of the husband who is the head of the family and who is given the absolute right of management and control of the community property and homestead. In *Benson v. District Court*, 57 Ida. 85, at 93, we said:

"In support of the contention that, until a decree of divorce is granted 'the court is utterly without any power or authority whatever to make any disposition of the community property,' counsel cite *Ray v. Ray*, 1 Ida. 566, and *Bedal v. Sake*, 10 Ida. 270, 77 Pac. 638, 66 L. R. A. 60. In the latter case this court said:

" 'The statute of this state only gives the court power to dispose of community property after the divorce is granted; indeed it acquires its power from this source alone. The husband controls the community property up until the very hour of the dissolution of the marriage relations.' The statement, that 'the husband controls the community property up until the very hour of the dissolution of the marriage relations,' is as true today as when *Bedal v. Sake* was written; *provided,* of course, that the court does not, in the meanwhile exercise the power granted by sec. 31–715, I. C. A., to make any necessary order for the custody of the community property, *pending the action.*"

There is no room for doubt about the power of the court in this state to enter orders from time to time for the support and maintenance of the wife and minor children, who are by stress of the conditions and circumstances and relations existing between the husband and wife forced to live separate and apart from the husband and father. On the other hand, since the husband and father has to in some way earn or raise the money to meet these demands for support and maintenance, he must necessarily have the right to continue under the provisions of the statute, to have the possession, control and management of the property. This

does not mean that the wife can be turned out of the home, nor does it mean, on the other hand, that she becomes the head of the family or can turn her husband out. Courts will issue restraining orders against a husband driving his wife and children out of the home or denying them protection; but where the court has denied the parties a decree of divorce, it will be a strange and extraordinary proceeding to, at the same time, turn around and dispossess the husband and drive him from the home and say to him that, although no divorce is going to be granted, he shall no longer have the right to select the domicile or to exercise his rights as the head of the family. Here the court refused to grant a divorce and turned around and exercised all the powers conferred by statute with reference to the possession, custody and control of the community property that it might have exercised had it granted the divorce.

There is no such thing as a divorce *a mensa et thoro* in this state. Notwithstanding the lack of any authority in a court of this state to grant a decree of separation, the trial court did do so in the following terms: *"That the defendant Freda Radermacher be and she is entitled to live separate and apart from the plaintiff."* This was clearly beyond and in excess of the jurisdiction of the court and is void. The theory of denying divorces, where the right thereto is not clear, is to encourage reconciliation. (*Barron v. Barron,* 7 Cal. Unrep. 345, 96 Pac. 273; 19 C. J., p. 65, sec. 121, note 35.) *You cannot reconcile husband and wife by judicial writs or fiats.* Cupid is not influenced by court orders. There is not much chance for reconciliation where the husband is driven out of his home and enjoined by the court from occupying it or exercising control or authority over it; and furthermore is required to pay the bills that the wife may incur, or, the equivalent, in monthly instalments, as maintenance.

Now it is said by the majority opinion that *mandamus* is not the remedy by which to reach the question here sought to be presented. I am in accord with that view of the matter in so far as it seeks to review the alleged error committed by the court in fixing the amount of allowance made for the support and maintenance for the wife and children. Under

the judgment of this court as above set out, *that was a matter* submitted to the judgment and discretion of the trial court; and of course the only way to correct any error therein would be on appeal. I do not agree with the majority opinion, however, that the rest of the judgment cannot be reached by the remedy sought. To my mind, the portion of the judgment of the district court set out above and italicized was *clearly contrary to the judgment and directions of this court on the former appeal.* Not only that; it was an excess of jurisdiction.

Where a decision has been entered on appeal and the case has been remanded with directions to the trial court to take certain specific action, and the trial court fails to carry out the directions of the appellate court, the writ of mandate will issue to compel performance of the action required. (*Kroetch v. Morgan,* 10 Ida. 172, 77 Pac. 19; *Connolly v. Woods,* 13 Ida. 591, at 598, 92 Pac. 573.)