(No. 6737. March 21, 1940.)

HENRY J. RADERMACHER, Appellant, v. FREDA M. RADERMACHER, Respondent.

[100 Pac. (2d) 955.]

Bissell & Bird and W. L. Dunn, for Appellant.

A. F. James, for Respondent.

MORGAN, J.—Heretofore this case was before us on appeal from a decree denying appellant a divorce and awarding separate maintenance to respondent, together with the community property of the litigants, to be used for her support and for the support of their minor children, with full power in respondent to sell, mortgage or otherwise dispose of or encumber any or all of it. The decree also awarded to respondent the sole care, custody and control of the minor children of the marriage. It also set aside to respondent, for the use and benefit of herself and minor children during her lifetime, the separate property of appellant, consisting of an undivided three-fourths interest in a ranch on Clover Creek in Gooding County, known as the home ranch, described in the decree, and she was awarded full and complete control over it and the right to collect all rents and profits to be received from it. Appellant was required to pay $25 a month toward the support of respondent and the children, together with attorney's fee and costs.

The denial of divorce was affirmed and the case was remanded to the district court with direction to set aside the decree awarding the property to respondent and to require, solely, a proper, adequate and protected monthly allowance for the support of herself and children. (*Radermacher v. Radermacher*, 59 Ida. 716, 87 Pac. (2d) 461.) A further hearing in the district court resulted in an amended decree, a copy of which appears in a concurring and dissenting opin-

ion in *Radermacher v. Sutphen*, 60 Ida. 529, 92 Pac. (2d) 1073, reference to which is made in order to avoid copying it here.

Appellant complains that the amended decree is contrary to the law of the case, established on the former appeal; that the court erred in decreeing to respondent the use of the separate property of appellant and of the community property of appellant and respondent; also in decreeing to respondent the custody and control of the minor children; that the decree violates Idaho Code Annotated, sections 31–902, 31–906, 31–913 and 31–1007; that the court abused its discretion by fixing the amount of the monthly, separate maintenance payments at sums in excess of the total income of appellant; that the court erred in ratifying, confirming and approving respondent's void acts done pursuant to the decree which was reversed on the former appeal. In *Radermacher v. Radermacher*, on rehearing, 59 Ida. 721, 723, 87 Pac. (2d) 463, 464, remanding the case to the trial court, we said:

"The original opinion is therefore modified and we now hold no error prejudicial to appellant's rights was committed by the court's ruling and the court need not proceed further in that connection; the only question on remand being the amount of the award for separate maintenance and care, custody and support of the four minor children. Wherefore the trial court should set aside the decree heretofore entered awarding the property to respondent and require solely a proper, adequate and protected monthly allowance for the care, custody and support of herself and the four minor children."

▮▮ ▮ The amended decree does not violate sec. 31–902, which provides:

"The husband is the head of the family. He may choose any reasonable place or mode of living and the wife must conform thereto."

That section is the law governing the domicile of the family in case the husband does not so far misbehave himself as to justify his wife in living separate and apart from him. When he adopts, and persists in, a course of conduct which renders it impossible for her to live with him in safety and

decency she is entitled to a decree that she may live separate and apart from him, and requiring him to contribute toward her support and that of their dependent children.

 In *Sauvageau v. Sauvageau*, 59 Ida. 190, 194, 81 Pac. (2d) 731, 732, we quoted from *Simonton v. Simonton*, 33 Ida. 255, 262, 193 Pac. 386, 388, as follows:

"While there are conflicting decisions upon this point, the weight of authority holds that courts of equity have inherent jurisdiction to award separate maintenance for the support of the wife and minor children independent of any action for divorce and independent of any statutory provision. (1 R. C. L., 875–881, secs. 14–19, inclusive, where the history of the rule is exhaustively reviewed.) In this state a suit for separate maintenance may be maintained by a wife, based on C. S., sec. 4654. (Sec. 31–901, I. C. A.) (*Galland v. Galland*, 38 Cal. 265; *Livingston v. Superior Court*, 117 Cal. 633, 49 Pac. 836, 38 L. R. A. 175.)"

The Simonton case was cited and followed in *Vollmer v. Vollmer*, 47 Ida. 135, 147, 273 Pac. 1, 5, also in *Walker v. Manson*, 49 Ida. 468, 474, 289 Pac. 86, 87, the court, in the latter case, quoting as follows:

"*Simonton v. Simonton*, 33 Ida. 255, 193 Pac. 386, held under C. S., sec. 4654, [31–901] without reference to sec. 4642, [31–704] that the courts of this state had jurisdiction to entertain an action for separate maintenance under the equitable powers of the court, which is in line with the general law on this subject. (30 C. J. 1078, sec. 877.)" See, also, *Stephens v. Stephens*, 53 Ida. 427, 24 Pac. (2d) 52; *Morden v. Morden*, 119 Wash. 176, 205 Pac. 377.

Appellant, in his brief, quotes from the amended decree:

" 'That the defendant Freda M. Radermacher is entitled to live separate and apart from the plaintiff.' "

He comments on that provision as follows:

"No court in Idaho has, or ever has had jurisdiction to award a divorce from bed and board, and excuse one matrimonial partner from the performance of marital duties while the marriage remained in force and effect. Freda Radermacher insisted upon remaining the plaintiff's wife. She did! 'She can't have her cake and eat it.' "

In another part of his brief appellant asserts:

"The stubborn fact is that appellant and respondent are husband and wife. The respondent insisted on the continuation of their relationship. She has made her bed. She must lie in it. Under the laws of the state of Idaho, the husband may establish his residence any place that he may desire, and adopt his style of living in reasonable conformity with his circumstances, and his wife must conform thereto. The decree takes away from him that statutory right. Under the law of the State of Idaho he is entitled to the management and control of his separate property; the decree takes from him that right. Under the laws of the State of Idaho he has the management and control of the community property, the decree also divests him of that right. Under the law of the State of Idaho he has equal rights with the mother to the care, custody and control of the children. The decree deprives him of that right. As long as the marriage relation exists, the plaintiff cannot be deprived of his statutory rights. He has the same rights as any other husband and father. No court has power or jurisdiction to take those rights away from him, except in case of divorce. No divorce was granted either party in this case. Hence the decree is void."

A husband cannot by his misconduct, including refusal to support his family, force his wife to procure a divorce from him. There are those who have religious scruples against divorce and others who look upon it as a disgrace. While the law recognizes the right to divorce for statutory cause, it neither criticizes nor penalizes those who do not see fit to avail themselves of that remedy. It is true, Idaho does not recognize the right to a divorce from bed and board, but it does recognize the right to separate maintenance, as heretofore pointed out. The word "separate," used in connection with "maintenance" indicates that it is the right of the wife to be maintained by her husband while living apart from him. Our remedy of separate maintenance, while not identical with divorce *a mensa et thoro,* is similar to it in some respects and may be used in place of it. As we understand divorce *a mensa et thoro,* it was a decree forbidding the parties to a marriage to live and cohabit together, but did not dissolve the bonds of matrimony.

 Where a decree of separate maintenance has been granted, as in this case, the parties are not forbidden to live and cohabit together, and they may lawfully resume the marital relation, by mutual consent, without first having the decree vacated. In the meantime, and until they do so agree, the erring husband must contribute to the support of his family and is deprived, because of his misconduct, of his right to cohabit with his wife. He cannot maintain a suit for divorce, on the ground of wilful desertion, because of her living apart from him pursuant to a decree of separate maintenance. Such a decree does not dissolve the bonds of matrimony. It continues in force the duty of the husband to support his family while some of the privileges of matrimony are denied him.

██ ██ Appellant's contention that the court erred in awarding the custody of the children to respondent is without merit. Section 31–1005 provides for such an award. It is:

"When a husband and wife live in a state of separation, without being divorced, any court of competent jurisdiction, upon application of either, if an inhabitant of this state, may inquire into the custody of any unmarried minor child of the marriage, and may award the custody of such child to either, for such time and under such regulations as the case may require. The decision of the court must be guided by the welfare of the child."

The record justifies the action of the judge in selecting the mother as custodian of the children.

As we understand the record, all property involved in the suit, except three-fourths interest in the home ranch on Clover Creek, is community property; that three-fourths interest is appellant's separate property and the remaining one-fourth interest belongs to one not a party litigant. Apparently appellant's right to control the occupancy of the buildings on the ranch is conceded, at least, it does not appear to have been disputed by his coowner. The power of the court to award the use of the community property and a part of the separate property to respondent is thus challenged in the second assignment of error:

"That the court erred in attempting to decree to the defendant the use and possession of the separate property of the plaintiff, and the use and possession of the community property of the plaintiff and defendant for the reason that the court is without jurisdiction to make and enter the same."

That assignment makes necessary consideration of the nature of separate and community property, and of the power of a court of equity to award the right to the use and occupancy of it to one of the parties to a marriage without entering a decree of divorce. The following statutory provisions are pertinent:

31-903. "All property of the wife owned by her before marriage, and that acquired afterward by gift, bequest, devise or descent, or that which she shall acquire with the proceeds of her separate property, shall remain her sole and separate property, to the same extent and with the same effect, as the property of a husband similarly acquired."

31-910. "The earnings and accumulations of the wife and of her minor children living with her or in her custody, while she is living separate from her husband are the separate property of the wife."

31-906. "All property owned by the husband before marriage, and that acquired by gift, bequest, devise or descent is his separate property."

31-907. "All other property acquired after marriage by either husband or wife, including the rents and profits of the separate property of the husband and wife, is community property . . . . "

31-913. "The husband has the management and control of the community property, except the earnings of the wife for her personal services and the rents and profits of her separate estate. But he can not sell, convey or encumber the community real estate unless the wife join with him in executing and acknowledging the deed or other instrument of conveyance, by which the real estate is sold, conveyed or encumbered."

The nature of the wife's interest in community property— whether a vested interest or a mere expectancy was, for many years, the subject of legislation and judicial discussion in

Idaho. In *Peterson v. Peterson*, 35 Ida. 470, 474, 207 Pac. 425, 426, the court had under consideration one of its former opinions on this subject and stated the substance thereof as follows:

"In *Bedal v. Sake*, 10 Ida. 270, 77 Pac. 638, 66 L. R. A. 60, this court held that one who voluntarily leaves this jurisdiction and the domicile and community property located in this state, and obtains a decree of divorce in a foreign jurisdiction, cannot maintain an independent action thereafter in this jurisdiction for a division of the community property. This would appear to be decisive of the question presented by the instant case, unless the law pertaining to the interest of a wife has been modified since that decision was rendered in 1904, or unless the court now departs from the doctrine announced in that case."

The court then pointed out changes which the legislature had made since 1904 in the law of community property and quoted from *Kohny v. Dunbar*, 21 Ida. 258, 121 Pac. 544, Ann. Cas. 1913D, 492, 39 L. R. A., N. S., 1107, wherein the character of the wife's interest in such property was discussed, as follows:

" 'The foregoing section of the statute (C. S., sec. 7803) [14–113, Devolution of community property.] recognizes the husband and wife as equal partners in the community estate, and it authorizes each to dispose of his or her half at will.* It also provides that the survivor shall continue to be the owner of half of such property subject only to the payments of the community debts. This statute clearly and unmistakably provides that the surviving spouse takes his or her half of the community property, not by succession, descent or inheritance, but as survivor of the marital community . . . . ' "

In *Kohny v. Dunbar*, the court discussed a number of cases, including *Hall v. Johns*, 17 Ida. 224, 105 Pac. 71, wherein the wife's interest in community property had been referred to as a mere expectancy, but refused to follow that doctrine and held "that upon the death of husband or wife, the

---

*[An error occurs in the foregoing quotation in this: "at will" has been substituted for "by will," the latter being used in the opinion in *Kohny v. Dunbar*.]

survivor takes one-half of the property in his or her own right as survivor and is not liable under sec. 1873 to pay an inheritance tax on such interest in the community estate."

In the Peterson case the court pointed out that in *Ewald v. Hufton,* 31 Ida. 373, 173 Pac. 247, the doctrine of *Kohny v. Dunbar* had been adhered to, and said:

"Under the several statutes and amendments mentioned, all of which were in force in their present form at the time the parties to this action acquired title to this homestead, as these statutes have been construed by the last-mentioned opinions of this court, it is clear that in a marital partnership, the interest of the wife in the community property is a vested interest, which is not divested *ipso facto* by the wife going to a foreign jurisdiction and dissolving the marital community by securing a divorce, and *Bedal v. Sake, supra,* so far as it holds a contrary doctrine, is hereby overruled."

Regardless of the view announced in the early cases, it is safe to say the doctrine is now firmly established in Idaho that the wife's interest in the community property is a present, vested interest, equal to that of the husband in all particulars other than the right to management and control, and is not a mere expectancy.

While sec. 31–913 constitutes the husband the agent of the partnership, composed of himself and his wife, and imposes on him the duty and responsibility of managing and controlling their community property, it does not follow that, when he has so conducted himself as to make it necessary for the court to award to his wife a decree of separate maintenance and support, the community property has been placed beyond the reach of a court of equity so that it cannot be used in providing her a protected allowance for her support and that of their dependent children. That part of the amended decree setting aside to respondent, certain articles of community property, for the use of herself and the minor children, is approved.

The wife has no vested interest in the separate property of the husband. At most her interest therein is but an expectancy, subject to being defeated by his will (secs. 14–103, 14–301). The court is without power to award the separate property of the husband to the wife, either per-

manently or temporarily. The portion of the amended decree awarding to respondent the house on the home ranch on Clover Creek, together with the house yard and the buildings situated therein, and the chicken house and the usual garden space on said land, also a portion of the barn necessary for two milk cows, being the separate property of appellant, is disapproved.

However, the separate property of the husband is not entirely beyond the reach of a court of equity. These people are so situated that the sensible thing for the husband to do is to permit his wife and children to continue to occupy and use the house and buildings appurtenant thereto, together with stable room in the barn for two cows, and a suitable garden spot, being part of his separate property. The record shows respondent is employed as teacher of a school and that the schoolhouse is located on the home ranch a short distance from the dwelling house in question; that she earns $90 a month, eight months of the year, as teacher and $5 a month, additional, for doing the schoolhouse janitor work. This money is her separate property, but she is expected to, and does, devote it toward the support of herself and the children. If she is required to move out of the house on the home ranch she must find another place to live, within a short distance of the schoolhouse or the family will be deprived of the benefit of her earnings, a matter in which her husband, with the welfare of his children at heart, has as much interest as has she.

The decree should require appellant to pay to his wife specified sums of money, at specified times, toward her maintenance and that of their children, including rent for a suitable house for them to live in, together with outbuildings and a garden. If he continues to provide his family with the home in which they now live, he should be given credit for its rental value on what he would otherwise be required to pay in cash. This will give him the alternative to permit his family to remain in the house on the home place or provide them a suitable home elsewhere, within reach of respondent's employment, or suffer the consequences of contempt of court for his failure to do either. Equity acts

*in personam.* (21 C. J. 194, sec. 183; 19 Am. Jur. 312, sec. 452.)

■ Our order, remanding this case, directed the trial court to set aside the decree theretofore entered awarding the property to respondent, and that it require, solely, a proper, adequate and protected monthly allowance for the care, custody and support of herself and the four minor children. The portion of the amended decree, wherein the judge confirmed and ratified the expenditures made by respondent from moneys received by her from the sales of community property, is in excess of the order remanding the case and is disapproved. It cannot be sustained for the same reason the portion of the decree authorizing her to sell the community property could not.

■ ■ We are not prepared to say the court erred in decreeing that appellant pay $40 per month toward the maintenance of his family. Appellant's testimony shows he was employed as a farm laborer and, when employed, received for his services $40 per month and his board and lodging. While this may be, we are not convinced it is, the extent of his earning capacity. The trial judge has better facilities for ascertaining the facts than we have. He had an opportunity to listen to the witnesses and to observe their conduct while testifying and we hesitate to disturb his findings from an examination of the record before us. In reaching a conclusion as to the amount a husband should pay toward the separate maintenance and support of his family, the earning capacity of the wife, as well as that of the husband, should be taken into consideration. (*Ashton v. Ashton,* 59 Ida. 408, 83 Pac. (2d) 991.)

■ Respondent moved for an order of this court requiring appellant to pay a reasonable fee to her attorney for his services rendered in this appeal. She supported her motion by her affidavit, made September 30, 1939, and it was opposed by appellant who filed an affidavit, made November 24, 1939, with respect to his financial circumstances. Conditions may have changed since these affidavits were made, and since it will be necessary for the trial judge to reconsider that part of the amended decree which fixes the amounts to be paid by appellant toward the maintenance of his family, and since

appellant's duty in that regard may have a bearing on the amount he should be required to pay to respondent's attorney for his services in the supreme court, we refer this question of attorney fee to the trial judge with the request that he fix the amount of it, and the terms of payment, in the decree.

The children of these parents are of school age, two of the daughters are being maintained away from home in high school. The father and mother are jointly and severally, equally responsible for their support and education. Situated as these parents are, it will require their combined efforts to discharge this obligation. At least they have the welfare of their offspring in common. They can, if they will, rear and educate their children, but to do so will require, not only industry, but cooperation, frugality and self-denial. Their earnings can be put to a better use than in financing further litigation between them.

The case is remanded to the district court with direction to modify the amended decree to conform to the views herein expressed. No costs awarded.

Givens, J., and Winstead, D. J., concur.

AILSHIE, C. J. (Dissenting in Part).—In August, 1937, this case was originally tried and decree was entered in September, denying plaintiff a divorce and awarding defendant (respondent here) $25 per month and other property allowances and costs. On appeal the judgment was reversed December 16, 1938, and the cause remanded for further proceedings. By the court's decision on rehearing, February 8, 1939, it was ordered that the trial court set aside its previous decree ''and require solely a proper, adequate and protected monthly allowance for defendant and her minor children.'' (*Radermacher v. Radermacher,* 59 Ida. 716, 721, 87 Pac. (2d) 461.) Upon further hearing in the lower court, an affidavit was filed by appellant, showing various sums of money received by respondent, to which the court's attention was called in making allowance for monthly payments. Objections to entry of decree were also filed, stating that the decree by its terms required plaintiff (appellant) to pay amounts in

excess of the amount fixed by this court as a proper award. May 31, 1939, the trial court entered its amended decree, providing in part as set forth in (*Radermacher v. Sutphen*), 60 Ida. 529, 92 Pac. (2d) 1070, 1073 and 1074, to which reference is here made.

June 3, 1939, plaintiff applied to this court for a writ of mandate requiring the district judge to enter a judgment in accordance with plaintiff's construction of the decision of this court. Alternative writ issued June 6th and argument was heard on demurrer to the application for the writ June 28th; and the decision of the court was filed July 20th, sustaining the demurrer and ordering that the writ be quashed. (*Radermacher v. Sutphen*, 60 Ida. 529, 92 Pac. (2d) 1071.) July 28th plaintiff appealed from the judgment and decree in the lower court May 31st.

The fact, that appellant could not obtain a divorce and respondent did not want or seek a divorce, leaves the parties each obligated to the other under all the legal duties and liabilities of the marriage contract, and each entitled to his and her proper legal status and rights in the home as husband and wife; and likewise with reference to the possession, management, and control of the community property and the separate property of each. In this state of the case, the court had no power to oust either from the home selected and furnished by the husband. It was error for the court to decree the "exclusive use and benefit" of the home and other property to the defendant. It was likewise error for the court to decree the defendant a divorce from bed and board (*a mensa et thoro*) since such decrees are not authorized or allowed in this state; (secs. 31–601 and 31–602, I. C. A.) and that is clearly the effect of the part of the decree reading: "*That the defendant Freda Radermacher be and she is entitled to live separate and apart from the plaintiff.*" If the husband returns to his home and provides for his family in a manner in keeping with his financial and physical ability to do, he should be no longer under the necessity of making *separate maintenance* payments.

A fallacy, which seems to be advanced as law by the majority opinion, is that recognizing the right of the court to enter

a decree adjudging that the defendant be, and is, entitled to *live separate and apart* from her husband. Such a decree relieves the party, in whose favor it is made, from any further duties under the marital contract. A decree that one spouse "is entitled to live separate and apart from" the other, operates in the future and relieves such spouse from all marital duties and obligations and sets aside the marital contract as to that spouse; whereas a decree of *divorce* acts upon facts already transpired and cancels an existing contract. It is in the latter case and there only, that the court acquires jurisdiction to divide or set aside property to the wife. (*Benson v. District Court,* 57 Ida. 85, 93, 62 Pac. (2d) 108.)

The law and public policy as well looks with favor upon and seeks to encourage reconciliation between husband and wife and members of the family. That result cannot be obtained by prohibiting either husband or wife from reforming or returning to the family or living in the family residence.

Now, under a decree and judgment of this kind, the wife may live indefinitely separate and apart from her husband, no matter how circumspectly he may live or what overtures he may make for reconciliation; and still she could not be charged with desertion, for the very good reason that she would be protected by the decree authorizing her "to live separate and apart from her husband." Indeed, the majority opinion admits that under *such a decree,* the wife cannot be charged with desertion when living apart from her husband. It says:

"It is true, *Idaho does not recognize the right to a divorce from bed and board,* but it does recognize the right to separate maintenance, as heretofore pointed out. The word 'separate', used in connection with 'maintenance' indicates that it is the right of the wife to be maintained by her husband while living with or apart from him. Our remedy of *separate maintenance,* while not identical with divorce *a mensa et thoro,* is similar to it in some respects and may be used in place of it. As we understand divorce *a mensa et thoro,* it was a *decree forbidding the parties to a marriage to live and cohabit together,* but did not dissolve the bonds of matrimony.

"Where a decree of separate maintenance has been granted, as in this case, the parties are not forbidden to live and cohabit together, and they may lawfully resume the marital relation, by mutual consent, without first having the decree vacated. In the meantime, and until they do so agree, the erring husband must contribute to the support of his family and is deprived, because of his misconduct, of his right to cohabit with his wife. *He cannot maintain a suit for divorce, on the ground of wilful desertion, because of her living apart from him pursuant to a decree of separate maintenance. Such a decree does not dissolve the bonds of matrimony. It continues in force the duty of the husband to support his family while some of the privileges of matrimony are denied him.*" (Italics supplied.)

Where a divorce has been denied, as in this case, and the court has made an award in favor of the wife, for the support of herself and children, the entry of the order does not terminate the jurisdiction which continues to adhere until reconciliation has been accomplished or a divorce or death has terminated the marital relation. (*Sauvageau v. Sauvageau*, 59 Ida. 190, 81 Pac. (2d) 731.)

In *Bedal v. Sake*, 10 Ida. 270, 276, 77 Pac. 638, 66 L. R. A. 60, this court said:

"The statute of this state only gives the court power to dispose of community property after the divorce is granted; indeed, it acquires its power from this source alone. The husband controls the community property up until the very hour of the dissolution of the marriage relations."

While another phase of the Bedal-Sake case was overruled in *Peterson v. Peterson*, 35 Ida. 470, 207 Pac. 425, the holding above quoted has never been overruled, modified, or criticized; nor has it ever been departed from since it was announced in 1904. On the contrary, the foregoing announcement in that case has been uniformly quoted, followed, and approved by this court down to the time of the writing of the present case.

In *Benson v. District Court*, 57 Ida. 85, 93, 62 Pac. (2d) 108, the question of jurisdiction was before this court and we quoted the foregoing with approval and then said:

"The statement, that 'the husband controls the community property up until the very hour of the dissolution of the marriage relations,' is as true today as when *Bedal v. Sake* was written."

In the Benson case we called attention to the distinction between the exercise of jurisdiction to dispose of the community property *on granting a divorce,* and the power to exercise "custody" over the property *pending the divorce action,* and said:

"The power the court has exercised here is not the power of 'disposition' conferred by sec. 31–713, but is rather the power to exercise 'custody' over the property pending the action, as conferred by sec. 31–715."

We again considered this same question and adhered to the rule in *Sauvageau v. Sauvageau,* 59 Ida. 190, 81 Pac. (2d) 731, citing other cases from this court. The majority opinion runs counter to the holding of all these cases. Here a divorce has been *denied* and the decree in that respect has become final.

In *Ashton v. Ashton,* 59 Ida. 408, 83 Pac. (2d) 991, the *divorce had been granted* and we considered the question as to the reasonable monthly payments which should be made the wife as alimony.

There is no question raised in this case as to the soundness of the rule announced in *Kohny v. Dunbar,* 21 Ida. 258, 121 Pac. 544, Ann. Cas. 1913D, 492, 39 L. R. A., N. S., 1107, defining the interest of husband and wife in the community property. That case has been the law in this state ever since it was announced. Furthermore, it also declared the husband's absolute right of "management and control of the community property" during his lifetime and until the community is dissolved by death or decree of court. Under our statute, the husband has the absolute management and control of the community property (*Metropolitan Life Ins. Co. v. McClelland,* 57 Ida. 139, 142, 63 Pac. (2d) 657, and cases therein cited; sec. 31–913, I. C. A.). Neither the community real property nor the homestead can be sold, conveyed, or encumbered except by "deed or other instrument of conveyance," in which the husband and wife join "in executing and acknowledging." (Sec. 31–913, *supra.*)

In the light of the evidence and findings, that the wife is receiving $95 a month for her services and, in addition thereto, is having the use of the residence and some of the livestock, and other personal property, while the husband is only receiving $40 per month, with board and lodging, for his services, an order requiring him to pay $40 per month toward maintenance for his wife and children is disproportionate and excessive at the present stage of the case. To my mind, it does not square up with the rule announced by this court in *Ashton v. Ashton, supra,* to which Justice Morgan refers. I agree with him that the judgment confirming and ratifying ''the expenditures made by respondent from moneys received by her from the sales of community property, is in excess of the order remanding the case'' and should be vacated.

The entire judgment should be reversed and the cause remanded with instructions to the trial court to make supplemental findings, showing the present employment, earnings, and income of each of the parties and the ability and opportunity of the plaintiff to earn or acquire funds with which to make maintenance payments for the benefit of the minor children; as well as the nature of employment and the ability of defendant to earn and assist in the maintenance of the family, as indicated in the Ashton case.

Holden, J., concurs in the foregoing.