(No. 7045. January 28, 1943.)

HENRY J. RADERMACHER, Respondent, v. M. M. DAN-
IELS and F. C. ERWIN, Co-partners doing business as
Twin Falls Commission Company, Appellants.

[133 Pac. (2d) 713.]

Rayborn & Rayborn and Harry Povey for appellants.

Bissell and Bird for respondent.

, AILSHIE, J.—This action was commenced by plaintiff (respondents here) to recover from the defendants the sale price of certain livestock wrongfully sold by them as auctioneers, which property belonged to the plaintiff at the time the sale was made. Defendants answered and denied plaintiff's ownership and alleged that the property had been decreed to plaintiff's wife, Freda M. Radermacher, prior to the auction sale by them. That prior to the sale plaintiff consented to the making of the sale. Defendants also alleged that the sale was made by the Twin Falls Commission Company, Inc., and that the corporation had long since been dissolved; that the defendants, M. M. Daniels and F. C. Erwin, were co-partners doing business under the firm name and style of Twin Falls Commission Company. Trial was had and judgment was entered for the plaintiff as prayed for by his complaint, and defendants have appealed.

The case out of which this action ultimately arose (*Radermacher v. Radermacher*) has a long and varied history and has found its way to this court a number of times: *Radermacher v. Radermacher,* 59 Ida. 716, 87 P. (2d) 461; *Radermacher v. Sutphen,* 60 Ida. 529, 92 P. (2d) 1070; *Radermacher v. Radermacher,* 61 Ida. 261, 100 P. (2d) 955; *Radermacher v. Eckert,* 63 Ida. 531, 123 P. (2d) 426. The facts material to the consideration of the present case are as follows:

By decree of District Court, September 3, 1937, entered in the case of "Henry J. Radermacher, Plaintiff, v. Freda M. Radermacher, Defendant", (59 Ida. 716) defendant was awarded the community personal property consisting of "not less than 52 head of cows, together with their 1937 calves, . . . . also not less than 25 head of horses." Appeal

to the Supreme Court was taken November 12, 1937. That judgment was reversed by this court September 8, 1939, (59 Ida. 716) ; and the District Court was directed to eliminate from his decree that part thereof, awarding to Mrs. Radermacher any of the *personal property.* While the case of *Radermacher v. Radermacher* was pending in this court on appeal, defendants in this case, upon the solicitation of Mrs. Radermacher, made auction sale of a part of the personal property "for the account of Freda *Radamaker*", as follows: September 15, 1937, 1 W. F. Cow, $56.35; Oct. 6, '37, 1 Red Hfr. $40.25; Oct. 26, '37, 1 Roan Hf., $51.40; Jan. 10, 1938, sale of 9 mares and 2 geldings, $292.50; and March 7, 1938, sale of 2 geldings, $102.50, totaling $543.00.

Defendants had knowledge of the pendency of the action and the appeal and were so notified thereof prior to the making of the sale. Plaintiff testified that he notified them personally of the pendency of the appeal and forbade them to sell the property. That testimony, however, is disputed. All the livestock sold by defendants (with the possible exception of one animal) were branded with the Triangle Bar brand, (▲) which was duly registered. (Sec. 24-1004, I. C. A.) and filed in the department of agriculture in accordance with the requirements of the statute, as plaintiff's brand. This was *notice* of ownership of stock having that brand. (Sec. 24-1011; *State v. Dunn,* 13 Ida. 9, 88 P. 235.) Plaintiff admits being present at the first sale but denies being present at any of the other sales.

Peculiar to this case is the fact that plaintiff had previously been cited for contempt in the divorce case for failure to make maintenance and suit money payments as ordered by the court. Consequently, he might well and wisely have hesitated about interfering with a sale authorized by the trial court. At any rate, it is not thought that, under these circumstances, he should be estopped for keeping silent, if he did. Defendants knew whose property they were selling.

It is claimed that no cause of action was shown against defendants, M. M. Daniels and F. C. Erwin, doing business under the firm name and style of Twin Falls Commission Company, for the reason that they were only *copartners;* whereas the sale of the property involved was made by the Twin Falls Commission Company, *a corporation.* Ordinarily, that would be a complete defense to a

cause of action, but here facts existed which seem to fully sustain plaintiff's position. The corporation was organized April 20, 1937. Defendants, Daniels and Erwin, owned 55% of the outstanding stock; 15% was owned by other parties. On petition of Daniels and Erwin, the corporation was dissolved April 23, 1940. At the time of the dissolution of the corporation or immediately prior thereto, Daniels and Erwin purchased all the outstanding stock, so that, when the corporation was dissolved, they owned all the *corporate stock.* They immediately "took over all of the assets of said corporation, consisting of buildings, fences, scales, corrals and bins owned by said corporation and continued to transact business under the same name as co-partners and with the equipment of the said corporation; that, ever since the dissolution of said corporation, the said defendants . . . . have been in possession of all the corporate assets remaining after the dissolution."

So it appears that the business was continued in the same partnership name as the corporation had used in its corporate capacity; the stock of the corporation was owned by the same people who owned the entire interest and property of the partnership. In other words, they dissolved their corporate capacity, and took up the new relation under the same name in a co-partnership capacity, simply a change from tweedledum to tweedledee.

The trial court found that the value of the assets taken over by the co-partnership "was approximately $4,000". The law seems to be well settled, that those who take over the business and assets of a dissolved corporation, take it subject to the debts and liabilities of the corporation, to the full extent of the value of the property taken over. (19 C. J. S., p. 1541, Sec. 1760; *United States v. Pann,* 23 F. (2d) 714.)

In the comparatively recent case of *Ortego v. Nehi Bottling Works,* 182 So. 365, 369, the Lousiana Court of Appeal had before it a very similar state of facts to the case here presented, and held the successors to the corporate assets liable to the extent of the value of such assets, saying:

"The pleadings show that the husband and wife owned all of the issued shares of the corporation, and upon the dissolution they acquired all of its assets and continued the operation of the business. Even if it be assumed that those individuals paid a valuable consideration to the

liquidator for the corporation's assets, necessarily that consideration was returned to them because of their being the sole stockholders. The transaction amounted to nothing more than a bookkeeping entry, or, as plaintiffs' counsel state, 'taking money out of one pocket and putting it into another.'

"We are still of the opinion that plaintiffs are entitled to proceed against defendants, the alleged successors of the corporation, notwithstanding the fact that their claim is founded in tort and is unliquidated."

■■■ It seems to be conceded by all the parties before the court, that this property was originally community property; and that the sole right of management, control, and disposition of the same rested in the (plaintiff) husband. (Sec. 31-913, I. C. A.; *Kohny v. Dunbar*, 21 Ida. 258, Ann. Cas. 1913D, 492, 39 L. R. A., N. S., 1107, 121 P. 544; *Radermacher v. Eckert*, 63 Ida. 531, 123 P. (2d) 426; *Radermacher v. Radermacher*, 61 Ida. 261, 272, 273, and 278 et seq., 100 P. (2d) 955.) It is argued, however, that appellants were justified in making the sale under the decree of the District Court awarding the property to the wife at any time prior to the reversal of that judgment. We are unable to agree with that contention. The judgment in the case of *Radermacher v. Radermacher*, supra, did not become *final* until the appeal was heard and finally disposed of by the Supreme Court. (Sec. 12-606, I. C. A.; *Radermacher v. Eckert*, 63 Ida. 531, 123 P. (2d) 426, 429; *Benson v. District Court*, 57 Ida. 85, 93, 62 P. (2d) 108; *Bedal v. Sake*, 10 Ida. 270, 66 L. R. A. 60, 77 P. 638.)

■■■ The question as to whether the jury should have passed on all the facts and their findings have been final thereon, or whether they should have acted only in an advisory capacity upon the special questions submitted to them, is of no moment in the present state of the case. The trial court, with the assent of counsel on both sides, tried the issues as in an equity case and empaneled a jury in a mere advisory capacity. Defendants apparently acquiesced in this procedure and presented to the court a number of interrogatories which they requested be given the jury. The trial court, on his own motion, submitted to the jury five separate interrogatories, which were answered as follows:

"Interrogatory No. 1.

"Do you find from the evidence that any act or words spoken by Henry J. Radermacher, caused the defendants to sell the property in question here?

"Answer: No.

"Interrogatory No. 2.

"Do you find from the evidence that the Twin Falls Commission Company would have held the sales as they did if Henry J. Radermacher had not been present?

"Answer: Yes.

"Interrogatory No. 3.

"Did plaintiff before the sales alleged notify defendants that all cattle bearing a certain described brand were his property and forbid them to sell any of the same?

"Answer: No.

"Interrogatory No. 4.

"Did defendants as principal stockholders of Twin Falls Commission Company, Inc., take over the business and assets after its dissolution?

"Answer: No.

"Interrogatory No. 5.

"If you find that the business and assets of said Twin Falls Commission Company, Inc., were taken over by the defendants, what do you find as the approximate value of said assets?

"Answer: —————."

The court adopted the answers to Interrogatories 1 and 2, rejected the others and made findings of fact in accordance therewith, on which the judgment was later entered. The evidence supports the findings. Under these circumstances, we are not called upon to determine whether the case made by the pleadings was one at law or in equity. (*Frank v. Frank*, 47 Ida. 217, 221, 273 P. 943; *Village of Kendrick v. Nelson*, 13 Ida. 244, 251, 89 P. 755, 12 Ann. Cas. 993; 4 C. J., p. 714, Sec. 2627; 3 Am. Juris., p. 35, Sec. 253.)

Judgment affirmed, with costs in favor of respondent.

Holden, C.J., and Buckner, D.J., concur.

BUDGE, J., concurring in conclusion, and dissenting in part.

On September 3, 1937, the District Court of the Eleventh Judicial District, in an action between Henry J. Radermacher, plaintiff, and Freda M. Radermacher, defendant, husband and wife, entered its decree awarding to Freda M. Radermacher the personal property herein involved, together with other property, both real and personal. On September 15, October 6, and October 26, 1937, Freda M. Radermacher delivered to appellants to be sold the following described personal property, to-wit: one cow, one red heifer, and one roan heifer. Appellants sold said property at the request of Freda M. Radermacher, paying to her the amounts received therefor, totalling $148.00, less commission.

At the time of delivery and sale of the above-mentioned livestock, no notice or undertaking on appeal had been filed from the above-mentioned decree, and were not filed or served until November 12, 1937, subsequent to the sales. The question arises whether or not recovery can be had against appellants for said amount. The jury found, in response to Special Interrogatory No. 3:

"Q. Did plaintiff, before the sales alleged, notify said defendants that all cattle bearing a certain described brand were his property and forbid them to sell any of the same?

"A. No."

The record discloses Henry J. Radermacher was present at the sale when some of the personal property was sold. When sale of the above property was made by appellants under the law, irrespective of the decree awarding said property to Freda M. Radermacher as her sole and separate property, she was the owner of an undivided one-half interest therein, and living separate and apart from her husband. (*Kohny v. Dunbar,* 21 Ida. 258, 121 P. 544.) Furthermore, respondent made no protest against the sale, and, as heretofore stated, had perfected no appeal. Judgment of the trial court above referred to was in full force and effect at the time of sale. In such circumstances, no recovery for the value of the personal property heretofore referred to could be had as against appellants for two reasons:

First, Henry J. Radermacher, by his acts and conduct, is estopped from recovering the value of the above-mentioned property. He had ample opportunity to protest and

object to the sale which he failed to do. The fact respondent had previously been cited for contempt for failure to make maintenance and suit money payments, as ordered by the court in the divorce action, would not afford a cogent excuse for his failure to notify appellants that the above personal property was his, and not the property of Freda M. Radermacher, and forbid appellants to make said sale.

In *Exchange State Bank v. Taber,* 26 Ida. 723-737, 145 P. 1090, quoting substantially from *Divide Canal and Reservoir Co. v. Tenney,* (Colo.) 139 P. 1110, and *Truesdail v. Ward,* 24 Mich. 117, the following language is used:

"Where a party by conduct has intimated that he consents to an act which has been done or will offer no opposition thereto, though it could not have been lawfully done without his consent, and he thereby induces others to do that from which they might have otherwise abstained, he cannot question the legality of action to the prejudice of those who have acted on the false inference to be drawn from his conduct."

Second, the sale of said property was consumated and money paid to Freda M. Radermacher prior to the service of notice of appeal and filing of undertaking on appeal. Payment of money by appellants to Freda M. Radermacher was for the benefit and enrichment of the community estate. Recovery by Henry J. Radermacher in this action also enriches the community estate.

I am unable to concur in the majority opinion affirming judgment of the trial court in favor of respondent for the value of personal property heretofore referred to prior to perfection of appeal to this court, amounting to $148.00, and judgment should be reduced in said amount.

As was said in *Radermacher v. Sutphen,* 60 Ida. 529, 92 P. (2d) 1070:

"In view of the fact that the original decree of the trial court awarded the property to the wife, which decree was in force for a time."

the decree of the District court was in force until the perfection of appeal from said decree of this court. Freda M. Radermacher, under the trial court's decree awarding to her the above personal property for maintenance of herself and four minor children, had the legal right to sell same personally, or through her agents, until an appeal

was perfected. No order by the judge of said court enjoining or restraining her from so doing was made.

I concur in the *conclusion* reached in the majority opinion except that portion awarding to respondents value of personal property sold prior to perfection of appeal, and as to that part, I dissent.

GIVENS, J., dissenting in part.

The decree of the District Court awarding Mrs. Radermacher the personal property was entered September 3, 1937. The appeal therefrom was taken November 12, 1937. A cow was sold September 15, 1937, for $56.35; one heifer was sold October 6, 1937, for $40.25, and another October 26, 1937, for $51.40—between the time the decree was entered and the appeal was taken; therefore, not all of the property was sold while the appeal was pending.

The decree of the District Court, until reversed, stood as an authoritative judicial pronouncement, and, until the appeal was taken, was of full force and effect. (34 C. J. 508.) This was recognized by this court in connection with the enforcement of the modification of the original decree ordered in the first appeal. (*Radermacher v. Sutphen*, 60 Ida. 529, 92 Pac. (2d) 1070.)

"In view of the fact that the original decree of the trial court awarded the property to the wife, *which decree was in force for a time*, it was also necessary for the court to determine what, if any, money or property remained in the hands of applicant's wife by reason of the sale and disposition of certain personal property and the collection of rents during the time that the original decree was in force and effect, and further to determine what property, if any, still remained unsold, and what money, if any, was in the hands of applicant's wife. As a result of such hearing the court made and entered its amended decree. It must be conceded that the court had jurisdiction to hear and determine the matters in controversy." [Emphasis mine.]

Such efficacy was further recognized in In re Estate of Randall, (Ida.) 132 P. (2d) 763.

"From January 17, 1935, to the appointment of Almeron E. Randall, October 14, 1939, the appellants were the duly and regularly appointed and acting executrices of the estate and as such had legal charge and custody of the estate

for all the heirs and were duly and regularly administering it. Secs. 14-102 and 15-802, I. C. A."

Therefore, I dissent from sustaining recovery for the three animals sold before the appeal was taken; otherwise, I concur in the conclusion reached in the majority opinion.